POLLMAN et al. v. CURTICE et al.

(Circuit Court of Appeals, Eighth Circuit. January 15, 1919.)

No. 5079.

1. TRUSTS &⟶72—RESULTING TRUST—PAYMENT OF PURCHASE MONEY FOR LAND.

One who buys land with money of another as his representative, but takes conveyance to himself, holds the title in trust for such other.

2. BANKS AND BANKING &⟶116(1)—NOTICE TO PRESIDENT.

A bank, which through its president and managing officer made a loan on land, and the president, who afterward bought the land subject to the mortgage, *held.* not bona fide purchasers for value without notice, where the grantor in fact held the title in trust for another, who on purchase of the land a year before paid the consideration, which was known to the president, through whom the negotiations were conducted, and who also knew other facts sufficient to put him on inquiry, and whose knowledge was attributable to the bank.

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

&⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit by Laura A. Curtice and another against F. W. Pollman and others. Decree for complainants, and certain defendants appeal. Affirmed.

John H. Crain, of Ft. Scott, Kan., for appellants.

William C. Scarritt, of Kansas City, Mo. (Isaac P. Ryland, of Kansas City, Mo., on the brief), for appellees.

Before SANBORN and CARLAND, Circuit Judges, and BOOTH, District Judge.

BOOTH, District Judge. This is a suit in equity brought by Laura A. Curtice and Miriam S. Curtice, widow and child, respectively, of J. M. Curtice, against F. W. Pollman and wife, Linn County Bank, and A. G. Copeland and wife.

Plaintiffs ask a decree adjudging that they are the owners of a described tract of land in Linn county, Kan.; that a mortgage on the land made by the Copelands to the bank, and a deed of the land made by the Copelands to Pollman, be declared null and void; and that the Copelands be ordered to make conveyance of the land to plaintiffs.

The trial court by its decree granted the relief sought. Appeal was taken by the defendants Pollman and the bank only; the defendants Copeland expressly declining to join in the appeal.

Briefly the facts disclosed by the record are as follows: J. M. Curtice, of Kansas City, and A. G. Copeland, of La Cygne, Linn county, Kan., were friends, and had been accustomed to hunt together in Linn county. Curtice, in the fall of 1914, authorized Copeland to purchase the land in question, which was then owned by D. C. and C. L. Boomer, of Iowa. Correspondence was had with the Boomers, and a purchase agreed upon. This correspondence was largely carried on in behalf of Copeland through the defendant bank, acting by Pollman, its president and sole managing officer. The correspondence shows that the deed finally made by the Boomers was transmitted to the bank in February, 1915, with the name of the grantee left blank at the request of the Linn County Bank. The name of Copeland was afterward filled in as grantee, with the knowledge of Pollman. A payment of $500 prior to the transmitting of the deed had been made to the Boomers through the bank, by means of the proceeds of a draft made out by Pollman, signed by Copeland, drawn on Curtice, and honored by him. Final payment was also made through the bank by means of a second draft, for $3,500, also made out by Pollman, signed by Copeland, and drawn on Curtice. The bank, by Pollman looked after the extension of the abstract and attended to fulfilling the requirements of the examining attorney. Pollman had met Curtice a number of times, knew that he was reputed to be wealthy, and he also knew Copeland was a man of limited means. The correspondence between the bank and the representative of the Boomers discloses that Copeland was to receive $200 as a commission. The Boomers authorized the bank to retain and pay this commission out of the final payment coming to them, and the bank did retain that amount and credited it to Copeland upon his account with the bank. The bank also retained out of the purchase price certain charges made

by it and certain expenses for abstract, etc. The transaction was closed in March, 1915, the negotiations having extended over a period of two months. All of these facts were known fully to Pollman, who was acting for the bank in carrying through the transaction for Copeland.

[1] Before the draft of $3,500 had been honored by Curtice, a declaration of trust had been forwarded by Curtice's attorney to Copeland, who signed and acknowledged the same and returned it. The declaration reads as follows:

"Know all men by these presents, that I, A. G. Copeland, of La Cygne, Linn county, Kansas, do hereby publish and declare that I hold title·in my name to the following described real estate situated in the county of Linn, state of Kansas, to wit: The east half (½) of the southwest quarter (¼) and the west half (½) of the southeast quarter (¼) the southeast quarter (¼) of the southeast quarter ·(¼) all in section 18, township 20, range 25, in trust for J. M. Curtice, of Kansas City, Missouri, and that I have no right, title, or interest therein, except as trustee for said J. M. Curtice; and I further declare and covenant that I will transfer, convey, and deliver by proper deed or conveyance the said property to the said J. M. Curtice, or to any one whom he may designate, upon his request."

It does not appear directly from the evidence that Pollman knew of this declaration of trust. Curtice died February 11, 1916, and, the declaration of trust being found amongst his papers, his widow, plaintiff Laura Curtice, in March, 1916, went to La Cygne, Kan., saw Copeland, and told him that she had come to see him about the farm held under the declaration of trust, and that she would wish him later to make a deed therefor. Copeland made no claim of title or interest in the land, and promised to make a deed of the same at any time that he was requested to do so. On May 20, 1916, the attorneys for Mrs. Curtice wrote to Copeland, inclosing a deed of the land for him to sign. No reply was received from Copeland, and the deed was not returned. A second letter was written June 13, 1916, requesting a return of the deed. No reply was received to this letter.

Copeland made a mortgage for $3,000 covering the land to the bank, dated May 15, 1916; but the transaction was closed and the mortgage recorded May 22, 1916, and on the same day Copeland deeded to Pollman the equity in the land, receiving as consideration certain lands in Oklahoma, upon which he gave a purchase-money mortgage.

Upon the facts stated Copeland held the title in trust for Curtice, who became the equitable owner of the land. Perry on Trusts (6th Ed.) § 126; Pomeroy, Eq. Jur. (3d Ed.) vol. 3, § 1037; Brainard v. Buck, 184 U. S. 99, 107, 22 Sup. Ct. 458, 46 L. Ed. 449. The trust thus created was a valid one under the statutes and decisions of the state of Kansas. Section 11681, Gen. Stat. of Kans. 1915; Franklin v. Colley, 10 Kan. 260; Lyons v. Berlau, 67 Kan. 426, 73 Pac. 52; Reemsnyder v. Reemsnyder, 75 Kan. 565, 89 Pac. 1014; Piper v. Piper, 78 Kan. 82, 95 Pac. 1051; Garten v. Trobridge, 80 Kan. 720, 104 Pac. 1067.

[2] That Copeland violated his trust in mortgaging the land to the bank, and in conveying the equity to Pollman, is clear from the evidence, and is not disputed by the appellants. But it is claimed by the appellants that they are protected by the general principle of equity,

also embodied in the statutes of Kansas, that such a trust as here created cannot defeat the title of a purchaser for a valuable consideration and without notice of the trust. The vital question in the case is whether the appellants have shown themselves to be within the principle stated.

It may be conceded that the bank and Pollman paid valuable consideration for their mortgage and deed, respectively. It may be conceded also that neither Pollman nor the bank had actual knowledge of the ownership of Curtice, and of the breach of trust and the fraud which Copeland committed in making the mortgage and the deed. But it was not necessary that plaintiffs in order to establish their rights should prove that Pollman and the bank had actual knowledge of the ownership of Curtice and of the fraud of Copeland in making the mortgage and the deed. It was enough for plaintiffs to prove that Pollman had such knowledge of facts as was sufficient to put a prudent man upon inquiry as to the real ownership of the land, and that such inquiry if pursued would have revealed the truth.

"Notice to the purchaser may be either actual or constructive. Actual notice is a knowledge of the facts of the trust brought home to the purchaser, or a knowledge of such facts as should lead him to a knowledge of the actual facts of the case." Perry on Trusts (6th Ed.) vol. 1, § 223.

"If it appears that the party has knowledge or information of such facts sufficient to put a prudent man upon inquiry, and that he wholly neglects to make any inquiry, or having begun it fails to prosecute it in a reasonable manner, then, also, the inference of actual notice is necessary and absolute." Pomeroy, Eq. Jur. (6th Ed.) vol. 2, § 597; Weniger v. Success Mining Co., 227 Fed. 548, 557, 142 C. C. A. 180; Grandison v. Nat. Bk. of Commerce, 231 Fed. 800, 809, 145 C. C. A. 620.

The facts known to Pollman at the time of the purchase from the Boomers were clearly sufficient to bring him within the foregoing rule, and it cannot be doubted that these facts were present in his mind when the deed and mortgage were made by Copeland, in May, 1916. It is true something over a year had elapsed since the purchase from the Boomers and that this was too long a time to sustain a legal presumption that Pollman's former knowledge of the facts was present in his mind. Guaranty Trust Co. v. Koehler, 195 Fed. 669, 683, 115 C. C. A. 475.

But the evidence as to the surrounding circumstances is convincing. The town was small, having 1,000 or 1,200 inhabitants. Pollman was not a mere clerk in the bank, but its managing officer, and had been such for 24 years. He had lived in Linn county all his life; had been engaged, not only in banking, but in farming and stock raising, and was the owner of several tracts of land. Most of the real estate transactions in that part of the county passed through his bank. The purchase from the Boomers was not the mere ordinary one of delivering a deed and receiving the consideration; it was unusual in several particulars, and the negotiations extended over some weeks. Pollman had attended to the matter in all its minutest details.

The later transactions, in May, 1916, were also somewhat complicated, and again Pollman attended to all the details. He had a twofold interest in these later transactions: First, as an officer of the

bank which was taking the mortgage; and, second, a personal interest, since he was buying the land himself and assuming the mortgage. He knew that Curtice had died since the purchase from the Boomers. He knew that Mrs. Curtice had been to La Cygne to see Copeland. At the time of these later transactions Pollman had the abstract brought down to date and again examined. It is unthinkable that the facts of the former transaction were not present in his mind at the time of the making of the mortgage and deed.

Furthermore, he does not claim that he had forgotten any of the facts known to him at the time of the purchase from the Boomers. He simply insists that those facts were not sufficient to put him upon inquiry. To this contention we cannot assent; the facts were clearly sufficient to put Pollman upon inquiry, and such inquiry, without question, would have resulted in disclosing the trust agreement and the ownership of the Curtices.

The notice to Pollman must also be imputed to the bank. Subject to certain exceptions, the law imputes to the principal and charges him with all notice or knowledge relating to the subject-matter of the agency which the agent acquires or obtains while acting as such agent and within the scope of his authority, or, according to the weight of authority, which he may previously have acquired, and which he then had in mind, or which he had acquired so recently as to reasonably warrant the assumption that he still retained it. Mechem on Agency, vol. 2, § 1813; The Distilled Spirits, 11 Wall. 356, 20 L. Ed. 167; American Nat. Bk. v. Miller, Agent, etc., 229 U. S. 517, 33 Sup. Ct. 883, 57 L. Ed. 1310; Mut. Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 Sup. Ct. 676, 60 L. Ed. 1202; Curtice v. Bank, 118 Fed. 390, 56 C. C. A. 174; Interstate Bank v. Yates Bank, 245 Fed. 294, 157 C. C. A. 486; Loring v. Brodie, 134 Mass. 453.

The facts which were known to Pollman were known to him as agent and officer of the bank, and came to him in due course of his duties as such officer. He was the sole representative of the bank, both in what was done by him relative to the purchase from the Boomers, and also, later on, in taking the mortgage from Copeland to the bank.

Nor do the facts bring the case within any of the exceptions to the rule above stated. It is not claimed, and could not be claimed on the evidence, that it was not Pollman's duty to disclose to the bank. Nor is it claimed that Pollman's interests were so adverse to those of the bank as practically to destroy the relation of agency. Nor, finally, is it claimed by the bank that Pollman was engaged in an attempt to cheat or defraud it; on the contrary, this is expressly disclaimed by the bank.

It follows that neither Pollman nor the bank were bona fide purchasers for valuable consideration without notice. The decree of the court below was right, and should be affirmed; and it is so ordered.