· MAUD E. SIMPSON *v.* CENTRAL VERMONT RAILWAY COMPANY.

February Term, 1921.

Present:   WATSON, C. J., POWERS, TAYLOR, and MILES, JJ.,
and FISH, Supr. J.

Opinion filed October 4, 1921.

*Carriers—Tariffs Must Be Filed in Offices—Railroad Bound by
Agent Accepting Goods As Baggage—Burden on Railroad
to Prove Compliance With Statute—Presumptions—Con-
flicting Presumptions—Jury Question—Judgment Affirmed
on Any Legal Ground Shown by Record—Knowledge Ac-
quired by Agent Outside of Employment Imputed to Prin-
cipal.*

1. Under G. L. 5281, a railroad company must not only file its
schedules of rates with the Public Service Commission, but
must also file them in its offices in order to establish the rates
therein contained, and, until both of these requirements are
complied with, the schedules afford no protection to the com-
pany.

2. Such schedules of rates aside, a railroad company is bound by
the act of its station agent in knowingly accepting goods other
than baggage for transportation as baggage and placing them
in the waiting room for the night with the express intent of
checking them in the morning; such goods being burned dur-
ing the night.

3. In an action against a railroad company for loss of goods by fire,
which had been accepted by its station agent as baggage, the
burden was on the defendant to show full compliance with
G. L. 5281 to make its schedules of rates available for its pro-
tection.  In sustaining such burden it was aided by the pre-
sumption that the statute had been fully complied with, since
noncompliance was penalized.  Such presumption, however,
was not conclusive, and the burden of proof remained with the
defendant, and the question was for the jury unless the proof
and inferences were all its way.

4. While presumptions have the force of evidence and stand until met
or overcome, one presumption may be met or even overcome by

another presumption; and, when opposing presumptions arise from the evidence, the question is one of fact for the jury.

5. Since the act of defendant's agent in knowingly accepting the goods in question as baggage raised a presumption that there was no lawful and binding regulation forbidding it, as such act was penalized if the schedules were properly established, the question whether defendant filed its schedules in its offices as required by the statute was for the jury.

6. A judgment below will be affirmed on any legal grounds shown by the record, irrespective of whether the question was raised below or briefed.

7. It was immaterial that defendant's agent was not acting as such when he learned that the goods in question were not baggage, if such information was actually in his mind when he accepted them as baggage.

ACTION OF TORT for the destruction by fire of certain goods accepted by the defendant's station agent as baggage, while stored in defendant's station at Sheldon Junction. Plea, the general issue. Trial by jury at the September Term, 1920, Washington County, *Wilson,* J., presiding. Verdict for the plaintiff to recover $1,021. Judgment on the verdict. The defendant excepted.

The defendant denied that it was a common carrier as to the goods in question, and claimed that it could only ship as baggage those things placed in that category by the tariffs which it was required by law to publish and file, and further claimed that unless baggage was specially valued there was no liability on its part for any amount in excess of $100, the amount allowed one passenger under its tariffs.

Section No. 4(a) of its tariff received in evidence reads: "Personal baggage consists of wearing apparel, toilet articles, and similar effects in actual use, and necessary and appropriate for the wear, use, comfort, and convenience of the passenger for the purpose of the journey, and not intended for other persons nor for sale." Section No. 5(a) reads: "Sample baggage consists of samples of merchandise and salesmen's catalogues carried by commercial travelers with the view of enabling them to make sales of goods similar to the samples carried or as shown in the catalogues and not for sale or free distribution by the owner or owners, their branch houses, customers, or others." Section No.

16(b) reads: "Unless a greater sum is declared by the passenger and charges paid for increased valuation at time of delivery to carrier, the value of baggage belonging to or checked for an adult passenger shall be deemed and agreed to be not in excess of one hundred dollars ($100.00) in value, and the value of the baggage belonging to or checked for a child traveling on a half ticket shall be deemed and agreed to be not in excess of fifty dollars ($50.00)." The opinion states the other facts of the case.

*J. W. Redmond* and *W. R. McFeeters* for the defendant.

*Porter, Witters & Longmoore* for the plaintiff.

POWERS, J. The plaintiff was a faker at the Franklin County Fair, held at Sheldon Junction in the fall of 1914. Her stock in trade consisted of cheap jewelry, canes, souvenirs, novelties, etc., and was transported from one fair to another in nine large trunks and several express packages. The railroad station at Sheldon Junction is only a short distance from the fairground, and is operated jointly by the St. Johnsbury and Lake Champlain Railroad Company and the defendant, being in the charge at the time here material of Frank Belanger, as joint agent. He was also express agent, and probably telegraph operator. During the afternoon of September 4, the last day of the fair, Belanger went to the plaintiff's tent on the fairground to deliver to her an express package, and while there on that errand asked her when she was going away, and (as stated in the defendant's brief) "suggested that their goods should be packed and at the station that night to insure shipment in the morning." Later in the afternoon the goods were packed, and about seven o'clock in the evening the nine trunks and eleven packages were carted to the station. When the carter arrived there, he notified Belanger that he had brought "Simpson's stuff from the fairground," and was directed by him to leave it on the station platform. When the carter arrived with the second load, Belanger told Mr. Simpson, the plaintiff's husband and assistant, who came with it, to put the things on the platform and that, after the trains had gone, they would put them in the waiting room—the only available place to house them. Simpson then purchased tickets of Belanger over the defendant's road to Northfield, Vt., his next stand, and after the departure of the last

train, moved the trunks and packages into the station waiting room as directed. When this had been done, Simpson spoke to Belanger about checking the trunks to Northfield, but the latter replied that he could not stop to do it that night, as he had already worked over his lawful hours, but that the train did not leave until about nine o'clock in the morning, and "we will have plenty of time to check them then." Accordingly, the trunks and packages were left in the station, where they burned up in a fire that destroyed the building before morning. This suit is brought to recover the value of the property so destroyed, and is based wholly upon the defendant's liability as a common carrier.

The defendant introduced in evidence certified copies of its Special Passenger Tariff, No. 146-11, and a Supplement thereto, and rested. It then filed a motion for a verdict, which was overruled and an exception saved.

These "Tariffs" were the "Schedule of Rates" specified in G. L. 5281, which requires a railroad company to "file with the public service commission and keep on file in all railroad offices" schedules showing the rates charged for the transportation of persons or property over its lines, together with the charge for any services in connection with such transportation. This section also requires such company to post in its stations and offices notices that such schedules are on file therein and may be seen on application. And the section further provides that the rates, tariffs, and charges "so scheduled and kept in such offices" shall not be increased except as therein specified. By G. L. 5290, a penalty is provided for violations of these provisions.

That these tariffs were duly filed with the public service commission was not disputed; but there was no direct evidence that they were kept on file in the defendant's offices, or that the notices called for were posted as required.

The plaintiff says that, without compliance with these requirements, the schedules are of no validity or effect. The defendant insists that the thing that gives them vitality is the filing of them with the commission, and that the other provisions of the statute are directory, merely; and though a failure to comply with them or either of them might subject a railroad company to the penalty prescribed, the binding force of the schedules would be unaffected thereby.

In support of its position, the defendant cites *Berwind-White Coal Mining Co.* v. *Chicago & Erie R. Co.*, 235 U. S. 371, 59 L. ed. 275, 35 Sup. Ct. 131, and other Federal Supreme Court cases construing the Interstate Commerce Act. That act requires an interstate carrier to file with the Interstate Commerce Commission, ''and print and keep open to public inspection'' schedules of rates and charges. It also provides that copies ''shall be kept posted in two public and conspicuous places'' in its stations and offices. The cases referred to hold that the posting of these copies is neither a step in the publication of the rate nor a condition precedent to its legality, but is a provision to take effect after the rate has been legally established. This holding does not go quite far enough to be decisive of the point here. It does not touch the requirement of the Federal statute that the schedules shall be kept ''open to public inspection''—which corresponds to the requirement of our statute that schedules shall be kept on file in the railroad offices—and we are not advised that the Supreme Court has ever held that compliance with this provision is not essential to the validity of the rate. It was deemed of such importance in *Kansas City Southern R. Co.* v. *Albers Commission Co.*, 223 U. S. 573, 56 L. ed. 556, 36 Sup. Ct. 316, that it was proved; and in *Texas & Pacific Ry. Co.* v. *Cisco Oil Mills*, 204 U. S. 449, 51 L. ed. 562, 27 Sup. Ct. 358, the Court says that ''the filing of the schedule with the commission, and the furnishing by the railroad company of copies to its freight offices incontrovertibly evidenced that the tariff of rates contained in the schedule had been established and put in force. * * *'' This language is adopted, almost literally, by Chief Justice Rugg in *New York Central, etc., Co.* v. *York & Whitney Co.*, 230 Mass. 206, 119 N. E. 855.

The cases cited by the defendant would be in point if the only question here was as to the effect of a failure to post the notices called for by our statute; but they shed little, if any, light upon the importance of that other requirement of our statute that the schedules shall be kept on file in the company's offices; and we shall get no help from that court on this question until they construe the provision of the Federal act that the schedule shall be kept open to public inspection.

[1] We think that a proper interpretation of G. L. 5281 requires us to hold that a railroad company must not only file its schedules with the commission, but must also file them in its

offices in order to establish the rates therein contained; and that, until both of these requirements are complied with, the schedules afford no protection to the company.   Otherwise the shipper would be without any feasible means of ascertaining the rate which the law required him to pay.   To be sure, the records of the commission would be open to him, and very likely the Legislature could lawfully leave him to the cold comfort of that situation; but we prefer to think that the Legislature intended to afford him a fair chance to ascertain the lawful rate at the point of shipment.   This view is strengthened by the provision of the statute requiring the agent on duty ''in the office'' to render assistance in securing information from and interpreting the schedules.

[2]   When the defendant rested, then, it had not gone far enough to meet the plaintiff's case.   For, the schedules aside, it was bound by the act of Belanger in knowingly accepting these goods for transportation as baggage.   *Bergstrom* v. *Chicago, etc., Ry. Co.*, 134 Ia. 223, 111 N. W. 818, 10 L. R. A. (N. S.) 1119, 13 Ann. Cas. 239; *Southern Ry. Co.* v. *Dinkins & Davidson Hardware Co.*, 139 Ga. 332, 43 L. R. A. (N. S.) 806; *Ferris* v. *Minneapolis & St. L. Ry. Co.*, 143 Minn. 90, 173 N. W. 178.

[3-5]   The burden of proof was on the defendant to show full compliance with the statute in order to make the schedules available for its protection.   In sustaining this burden, the defendant was aided by a presumption that the statute had been fully complied with.   This arose from the fact that noncompliance was penalized.   G. L. 5290; *Thayer* v. *Glynn*, 93 Vt. 257, 106 Atl. 834.   But this presumption, which is nothing more or less than the presumption of innocence, was not conclusive; the burden of proof remained on the defendant, and the question was for the jury, unless the proof and inferences were all its way. *Barber* v. *Bailey*, 86 Vt. 219, 84 Atl. 608, 44 L. R. A. (N. S.) 98; *County of Bennington* v. *Manchester*, 87 Vt. 555, 90 Atl. 502. In many cases, a presumption, even when invoked by one who has the burden of proof, will determine the controversy; for our rule is that presumptions have the force of evidence.   *In re Cowdry's Will*, 77 Vt. 359, 60 Atl. 141, 3 Ann. Cas. 70.   And they stand until met or overcome.   One presumption, however, may be met or even overcome by another presumption.   *Hitt* v. *Carr* (Ind. App.) 130 N. E. 1.   And when opposing presumptions arise from the evidence, the question is one of fact, and goes

to the jury. *Turner* v. *Williams,* 202 Mass. 500, 89 N. E. 110, 24 L. R. A. 1199, 132 A. S. R. 511. In the case in hand, the proof and inferences were not all one way. The fact that the agent knowingly accepted the goods as baggage indicated, more or less strongly, that there was no lawful and binding regulation forbidding it. Here, again, the presumption of innocence arises; for, if the schedules were properly established, his act in so doing was punishable under the section of the statute referred to; and if they were not, his act was lawful. It has been frequently said by courts and text-writers that the death or divorce of one of the parties to a prior marriage may be presumed in order to support a second one. Some even say that it will be. That it may be is the law of this Court. *Greensborough* v. *Underhill,* 12 Vt. 604. And when, in such cases, the presumption of the continuance of life is met by the presumption of innocence in the second marriage, it is for the jury to say which shall prevail. 1 Jones Ev. § 101. So here it was for the jury to weigh the presumptions arising from the evidence and determine the fact involved. The motion for a verdict was properly overruled.

[6] The defendant raised the same question in various other ways, but in each case it predicated its claim upon the conclusiveness of the schedules, and did not ask to go to the jury on the question of their legal establishment. So there was no error. That the point on which we turn the case was not made below is of no consequence (*Fairbanks* v. *Stowe,* 83 Vt. 155, 74 Atl. 1006, 138 A. S. R. 1074), nor would the plaintiff's failure to present it here affect our disposition of the case. Error must be made to appear; the judgment below was for the plaintiff, and it will be affirmed in this Court on any legal grounds shown by the record—whether briefed or not. *Wood* v. *James,* 93 Vt. 36, 106 Atl. 566. This holding makes it unnecessary to consider the other questions raised regarding the schedules. In the foregoing discussion, it will be observed, we assume the soundness of the defendant's claim as to the binding effect of the definition of baggage found in the schedules. The defendant excepted to that portion of the charge in which the jury was instructed that if Belanger, knowing that the trunks contained merchandise, accepted them as baggage, the company would be bound—claiming that the charge should have been that Belanger's knowledge, in order to bind the company, must have been obtained while acting within the scope of his employment as the defendant's agent.

[7]   It is quite apparent that Belanger, when he went to the plaintiff's tent on the occasion above referred to, was the agent of the express company; but, at the very time he delivered the package, he made the suggestion about getting the things to the station.   This was an act in the defendant's behalf.   The delivery of the package and the suggestion about the baggage were practically one act.   They were so intimately connected, that there would be no practical way for the jury to distinguish what he observed when he delivered the package from what he observed when he made the suggestion—in other words, what he learned while acting as agent of the express company from what he learned while acting as agent of the defendant.   So it does not appear that any harm resulted to the defendant from any shortage in this instruction.

Moreover, the rule contended for by the defendant, though of general application, is subject to this limitation; where it clearly appears that the information obtained by an agent outside the employment is actually in his mind at the time he performs the act in question, it will be imputed to and bind the principal (*Hart* v. *Farmers & Mechanics Bank,* 33 Vt. 252; *Pollman* v. *Curtice,* 255 Fed. 628, 166 C. C. A. 662; *Lundeau* v. *Hamilton* [Iowa] 159 N. W. 163; *Snyder* v. *Partridge,* 138 Ill. 173, 29 N. E. 851, 32 A. S. R. 130; *Wilson* v. *Minnesota, etc., Assn.,* 36 Minn. 112, 30 N. W. 401, 1 A. S. R. 659; *Constant* v. *University of Rochester,* 111 N. Y. 604, 19 N. E. 631, 7 A. S. R. 769, 2 L. R. A. 734; *Wittenbrock* v. *Parker,* 102 Cal. 93, 36 Pac. 374, 41 A. S. R. 172, 24 L. R. A. 197; *Fairfield Savings Bank* v. *Chase,* 72 Me. 226, 39 A. R. 319; *Schwind* v. *Boyce,* 94 Md. 510, 51 Atl. 45; *Hess* v. *Conway,* 92 Kan. 787, 142 Pac. 253, 4 A. L. R. 1580; *Thimsen* v. *Reigard,* 95 Or. 45, 186 Pac. 559; *Harrington* v. *United States,* 11 Wall. 356, 20 L. ed. 167), unless it was obtained under such circumstances as to make it the legal duty of the agent not to divulge it to the principal.  *Snyder* v. *Partridge, Wittenbrock* v. *Parker, Thimsen* v. *Reigard, Harrington* v. *United States,* above cited.

The plaintiff here was entitled to the benefit of all the information regarding this matter that Belanger acquired at the fairground, for it was so recently obtained that it simply could not have been forgotten when he accepted the trunks.  *McClelland* v. *Saul,* 113 Ia. 208, 84 N. W. 1034, 86 A. S. R. 370;

*Chouteau* v. *Allen,* 70 Mo. 290; *Brothers* v. *Kaukauna Bank,* 84 Wis. 381, 54 N. W. 786, 36 A. S. R. 932.

*Affirmed.*