## REED v. UNITED STATES VANADIUM CORPORATION.

### No. 2746.

Circuit Court of Appeals, Tenth Circuit.

Nov. 17, 1943.

Richard E. Conour, of Del Norte, Colo., for appellant.

R. Hickman Walker, of Denver, Colo. (Moynihan, Hughes & Sherman, of Montrose, Colo., and Worth Allen, of Denver, Colo., on the brief), for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

Prior to January 26, 1937, Rupert E. Borden was engaged in hauling ore and mine supplies for the United States Vanadium Corporation[1] as a contract motor carrier between Grand Junction and Uravan, Colorado, and between points in the vicinity of Uravan. On that date, he applied to the Colorado Public Utilities Commission[2] for a certificate of public convenience and necessity to operate as a common carrier of passengers and freight between Grand Junction and Uravan and in the territory adjacent thereto. A proposed schedule of rates and a proposed time schedule were attached to the application. By its order dated April 7, 1937, the Commission granted the certificate. The order required Borden to file a tariff of rates, rules, and regulations and a time and distance schedule as provided in the Rules and Regulations of the Commission, within 20 days from April 7, 1937. Borden never filed or

published such tariff or schedule. On May 1, 1937, Borden sold his transportation business to the Valley Truck and Implement Company.[3] On June 12, 1937, Valley filed with the Commission an application for authority to purchase the transportation business of Borden and to have the certificate transferred to it. With its application, Valley filed a proposed schedule of rates and a proposed time schedule identical with those attached to Borden's application. On December 1, 1937, the Commission entered its order authorizing Borden to transfer the certificate to Valley. The order provided that such transfer should become effective only if and when Valley should have the necessary insurance on file with the Commission. It provided that the tariff of rates and regulations of Borden under the certificate should become and remain those of Valley until changed according to law and the Rules and Regulations of the Commission. In a letter transmitting a copy of its order to Valley, the Commission said:

"Your attention is directed to the requirements of filing of tariff or time schedule as set forth in the enclosed decision. Failure to file will be considered sufficient cause to revoke your certificate."

Valley never filed or published a tariff or a time and distance schedule.

By letter dated April 14, 1937, the Commission advised Borden that he would not be entitled to operate until the Commission had received

"Certificate covering Public Liability Insurance

Certificate covering Property Damage Insurance

Policy covering Cargo Insurance
Complete Description of Equipment
Issuance Fee."

The letter further called Borden's attention to the requirements of the order that he file a tariff and a time schedule.

Borden did not file or cause to be filed with the Commission any insurance covering his operations as a common carrier.

Valley filed insurance policies with the Commission on July 22, 1937, August 6, 1937, September 11, 1937, December 7, 1937, and February 23, 1938. All of these were filed under its commercial carrier permit No. C-4121, with the exception of a cargo liability insurance policy filed August 6,

---

[1] Hereinafter called Vanadium.
[2] Hereinafter called the Commission.

[3] Hereinafter called Valley.

1937. The cargo policy was canceled on April 24, 1938, and no policy was substituted therefor.

The Commission prescribed rates by its decisions 7118, 8009, and 8396, issued on February 5, 1936, July 17, 1936, and September 21, 1936, respectively. The order of February 5, 1936, directed all motor vehicle common carriers "to establish, effective on the 1st day of April, A. D. 1936, upon notice to the Commission and to the general public, by not less than one day's filing and posting in the manner prescribed in Section 16 of the Public Utilities Act, and thereafter to maintain and apply to the transportation of freight and property within the State of Colorado" the rates, classifications, exceptions, rules, and regulations set forth in the order. The supplemental orders of July 17, 1936, and September 21, 1936, contained similar requirements with respect to the filing and publication of tariffs. Neither Borden nor Valley ever filed or published tariffs in accordance with the requirements of such orders.

Between May 1, 1937, and March 31, 1938, Valley undertook to operate as a motor vehicle carrier between Grand Junction and Uravan and between points in the vicinity of Uravan. Valley hauled freight for Vanadium. Vanadium paid Valley therefor in accordance with a verbal contract entered into about May 1, 1937, under which Vanadium agreed to pay Valley operating costs, plus 20 per cent of its investment. Valley made a demand upon Vanadium for alleged undercharges claimed to be due Valley and Valley filed with the Commission a petition seeking relief against Vanadium.

Section 6, Ch. 29, C.S.A. 1935, in part, reads:

"Every common carrier, subject to the provisions of this article, shall *file* with the commission created by this article, *print and keep open to public inspection,* schedules showing all the rates, fares and charges for transportation between points on its own route in this state, * * *." (Italics ours.)

Section 15, Ch. 127, Laws 1913, known as "The Public Utilities Act," (§ 16, Ch. 137, C.S.A. 1935), in part, reads:

"Under such rules and regulations as the commission may prescribe, every public utility shall *file with the commission within such time and in such form as the commission may designate* and shall *print and keep open to public inspection* schedules showing all rates, tolls, rentals, charges and classifi-

cations collected or enforced, or to be collected and enforced, * * *." (Italics ours.)

Section 326, Ch. 16, C.S.A.1935, reads:

"All provisions of the public utilities act of the state of Colorado (chapter 137), and all acts amendatory thereof or supplemental thereto, shall, insofar as applicable, apply to all motor vehicle carriers subject to the provisions of this subdivision."

Section 301, Ch. 16, C.S.A.1935, reads:

"All motor vehicle carriers as defined in this subdivision are hereby declared to be public utilities within the meaning of the public utility laws of this state, and are hereby declared to be affected with a public interest and subject to this subdivision and to the laws of this state, including the regulation of all rates and charges, now in force or that hereafter may be enacted, pertaining to public utilities, so far as applicable, and not in conflict therewith."

Rule 36 of the Rules and Regulations of the Commission adopted June 8, 1937, and effective June 15, 1937, in part, provides:

"(a) All motor vehicle common carriers shall file with the Commission one copy of a tariff showing all the rates, fares, charges, rules and regulations for transportation, and one copy of a time schedule showing the territory, stations, distances, times of arrival and departure of vehicles, and location of depots. * * *"

The Commission held that the proposed rate and time schedules attached to the application for the certificate and to the application for the transfer thereof were filed in conformity with the form of application provided by the Commission and were for the information of the Commission only; that they did not constitute a tariff and were never received by the Tariff Division of the Commission; and that the filing thereof with the applications did not constitute a filing or publication of a tariff. It called attention to the fact that the certificate required Borden to file a tariff within 20 days from the date of the order, and stated that when it authorized the transfer of the certificate, it became incumbent on Valley to file and publish a tariff. It further held that the rates promulgated by it in its orders of February 5, July 17, and September 21, 1936, were not effective without compliance with the provision of such orders requiring the carriers to file tariffs. It concluded that no tariffs were ever filed, either by Borden or Valley, covering any

of their respective transportation services. It stated that its jurisdiction in the matter was limited to a clarification and construction of its own orders. On October 26, 1940, the Commission entered a further order dismissing the proceedings for want of jurisdiction over the person of Valley.

In its decision the Commission also held that the certificate did not become effective until March 12, 1938, was suspended May 1, 1938, and revoked December 19, 1938.

While the proceeding was pending before the Commission, Valley brought this action against Vanadium to recover for alleged undercharges. Its complaint contained two causes of action. The first cause of action was predicated upon the rates promulgated in the Commission's orders of February 5, July 17, and September 21, 1936. The second cause of action was predicated upon the proposed schedule of rates filed with the Borden and Valley applications. The trial court concluded that neither the rate orders nor the proposed schedules were binding on Vanadium and held that Valley was only entitled to transportation charges on the basis of the verbal contract of May 1, 1937, and entered its judgment dismissing the action.

The applicable statutory provisions required Valley to file a tariff with the Commission, to print the tariff, to keep it open for public inspection, and to post it in its depots and stations. The proposed schedules of rates met none of these requirements. Furthermore, they did not meet many of the requirements of Rule 36 of the Commission. They were not regarded by the Commission as a tariff.

 The filing and publication of the tariff is essential to establish the tariff and put it in force.[4] Publication is required for the benefit and advantage of the public.[5]

 We hold that the proposed schedules of rates filed with the applications were not filed and published in a manner which constituted them a legal tariff.

The orders of February 5, July 17, and September 21, 1936, prescribed but did not establish rates. On the contrary, they expressly required the carriers "to establish" the rates therein prescribed "upon notice to the Commission and to the general public, by not less than one day's filing and posting." The Commission so held in the proceeding brought before it by Valley. In its decision the Commission said:

"Certainly, that part of our order in Case 1585, supra, requiring carriers to file a tariff, is just as effective and binding as that part setting out certain rates. We do not believe that it would be usurping the functions of the courts or exceeding our own administrative powers, which at least are quasi-judicial, to construe our own rate order in this particular. It is our opinion that the filing of a tariff is one of the steps required to establish a legal rate for motor vehicle carriers in Colorado under our decision in Case No. 1585, supra. It therefore follows that in the instant matter, no tariffs being on file, the charges were settled and determined by the contract between the parties. The carrier could be proceeded against in proper manner for failure to file his tariff, but neither the shipper nor the carrier could come before this Commission seeking any relief as to either over or under payments of charges."

A claim for an undercharge cannot be predicated upon a tariff which was never filed nor published and which did not establish a lawful rate.[6]

 The requirement in the order authorizing the transfer of the certificate "That the tariff of rates and regulations of the transferor under said certificate of public convenience and necessity shall become and remain those of the transferee herein until changed according to law and the rules and regulations of the Commission" had reference to a lawfully established tar-

[4] United States v. Miller, 223 U.S. 599, 604, 32 S.Ct. 323, 56 L.Ed. 568; Oregon R. & Nav. Co. v. Thisler, 90 Kan. 5, 133 P. 539, 541; Atlanta, K. & N. R. Co. v. Horne, 106 Tenn. 73, 59 S.W. 134, 135; Virginia-Carolina Peanut Co. v. Atlantic Coast Line R. Co., 166 N.C. 62, 82 S.E. 1, 3, 4; Hunter v. St. Louis & S. F. R. Co., 167 Mo.App. 624, 150 S.W. 733, 735, 736; Simpson v. Central Vermont R. Co., 95 Vt. 388, 115 A. 299, 300, 301; Schaff v. J. C. Famechon Co.,

145 Minn. 108, 176 N.W. 197, 198; Norfolk Tidewater Terminals v. Norfolk & P. Belt Line R. Co., 170 Va. 118, 195 S. E. 684, 688.

[5] Atlanta, K. & N. R. Co. v. Horne, 106 Tenn. 73, 59 S.W. 134, 135; Swift & Co. v. United States, 7 Cir., 255 F. 291, 293; Schaff v. J. C. Famechon Co., 145 Minn. 108, 176 N.W. 197, 198.

[6] Schaff v. J. C. Famechon Co., 145 Minn. 108, 176 N.W. 197, 198.

iff, duly filed and published, and hence had no force or effect since Borden had not made effective, either by filing or publication, any lawful tariff of rates and charges.

The judgment is affirmed.