**Pike Industries, Inc. v. Middlebury Associates, Middlebury Developers, Inc., R. E. Bean Construction Co., Inc., Trustees of Hanover Square Realty Investors**

[436 A.2d 725]

No. 427-79

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed November 24, 1980

Motion for Reargument Granted January 30, 1981

Present: Barney, C.J., Larrow, Billings and Hill, JJ., and Shangraw, C.J. (Ret.), Specially Assigned

Opinion Filed August 14, 1981

Motion for Reargument Denied September 30, 1981

*Karl W. Neuse,* Middlebury, for amicus curiae Pitcher Associates.

*W. Edson McKee,* Montpelier, for Plaintiff.

*John A. Kelley,* Middlebury, and *Peter S. Gilfillan* and *Philip Abramowitz* of *Gross, Shuman, Brizdle, Laub & Gilfillan, P.C.,* Buffalo, New York, for Middlebury Associates and Middlebury Developers, Inc.

*John H. Carnahan* and *J. Eric Anderson* of *Fitts, Olson, Carnahan, Anderson & Bump,* Brattleboro, for R. E. Bean Construction Co.

**Barney, C.J.** This is the second appeal in this case. The plaintiff, Pike Industries, Inc. (Pike), is still seeking to recover for paving work done as part of a Middlebury shopping center. An earlier hearing here led to a remand. *Pike Industries, Inc.* v. *Middlebury Associates,* 136 Vt. 588, 398 A.2d 280 (1979).

Middlebury Associates and Middlebury Developers, Inc. (Middlebury), are two interrelated organizations that planned the shopping center. They contracted with R. E. Bean Construction Company for construction of the center. Bean subcontracted with Pike for the paving work.

On October 18, 1974, Pike pulled off the paving job, refusing to continue until assured that it would be paid. An attorney for Middlebury called Pike, and a telegram confirming the conversation followed. After the telegram Pike finished the job. On November 11, 1974, five days after Pike completed the paving work, Middlebury terminated the contract with Bean and took over the project, justifying the takeover under a provision of the main contract allowing Middlebury to take over construction if Bean breached the contract.

When Pike did not get paid for its work, it filed suit against both Bean and Middlebury. It sued Bean on the original subcontract, and it sued Middlebury as a surety, claiming the telephone conversation and telegram constituted a contract of guarantee. The trial court found for Pike, holding Bean and Middlebury jointly and severally liable. Bean was found liable on the original subcontract, and Middlebury as a surety. Middlebury appealed.

On appeal, we found that the telegram did not satisfy the Statute of Frauds, and that therefore Middlebury could not be liable as a surety. The issue of whether the conversation and telegram constituted an original contract between Middlebury and Pike remained open, however, so we reversed the trial court judgment and remanded the case for a determination of whether there was an original contract between Middlebury and Pike. We noted that to find an original contract between Middlebury and Pike, the court would have to find a discharge of Bean, and the substitution of Middlebury in Bean's place.

On remand the trial court concluded that Middlebury's intervening negotiations with Pike (the conversation and telegram) after Pike had pulled off the job, coupled with the fact that Middlebury never paid Bean for the Pike work, indicated that Bean ceased to be liable to Pike after the conversation and ensuing telegram. The court also concluded that the conversa-

tion and telegram constituted a new contract between Pike and Middlebury. As a result of these conclusions, the trial court dismissed Pike's suit against Bean, and found Middlebury fully liable to Pike for the paving work, in the amount of $115,651.13 plus interest. Middlebury again appeals.

Middlebury first contends that, since Bean did not appeal the part of the original trial court decision holding Bean liable to Pike, that portion of the judgment still stands. Middlebury argues that that portion of the judgment constitutes res judicata with respect to Bean's liability to Pike for the paving work and, therefore, precludes the trial court from finding in the second hearing that Bean had been released from liability. We hold later in this opinion that Bean still is liable to Pike, however. Therefore, we need not address Middlebury's contention.

Middlebury next contends that there was no evidence to support the lower court's decision. They also allege lack of mutuality, indefiniteness, and lack of consideration. Examination of the original contract between Bean and Middlebury does not bear out Middlebury's claim, however. Article 16 of the Standard Form of Agreement Between Owner and Contractor, which Bean and Middlebury signed in setting up the project, provides for termination of the contract by either the Contractor (Bean) or the Owner (Middlebury). It additionally provides that, if the Owner terminates the contract,

> the Owner shall further assume and become liable for obligations, commitments and unsettled claims that the Contractor has previously undertaken or incurred in good faith in connection with [the project].

Bean was liable to Pike under the subcontract, since Pike had performed. By terminating the contract, Middlebury assumed Bean's previously incurred obligation to pay Pike according to the subcontract. Middlebury thereby owed a duty to Bean to pay Bean's debts. Pike is a creditor beneficiary of that obligation and may enforce Middlebury's duty to pay Bean's debt to Pike. 2 Williston on Contracts § 361 (3d ed. 1959); see Green v. McDonald, 75 Vt. 93, 97, 53 A. 332, 333 (1902). (The law-equity distinction in our law, to which Green refers, has been abolished. 4 V.S.A. § 219; V.R.C.P. 2.)

Pike therefore has a direct action against Middlebury and may recover accordingly.

That this basis of Middlebury's liability went unnoted below will not prevent us from affirming the superior court's judgment in favor of Pike. We will affirm a judgment which is correct, even if the grounds stated in support of it are erroneous. *Sexton* v. *Greer*, 135 Vt. 343, 345, 376 A.2d 750, 751 (1977).

On remand the trial court dismissed Pike's action against Bean, concluding that Bean had ceased to be liable after the telephone conversation and ensuing telegram. In fact, Middlebury merely assumed Bean's liability within the terms of the original contract. The contract between Bean and Middlebury could not discharge Bean's liability to Pike; neither were Pike's acts sufficient to discharge Bean. In such a case, the applicable legal concept does not entirely discharge Bean, but preserves, for Pike's benefit, Bean's secondary liability. Williston, *supra;* see *Green* v. *McDonald, supra,* 75 Vt. at 97, 53 A. at 333. The judgment order dismissing the Pike claim against Bean should thus be stricken and replaced with an order preserving this liability.

On remand the trial court also concluded that Bean had breached the main contract between Bean and Middlebury. The court consequently awarded Middlebury $4,619.53 and costs from Bean. Bean appeals that portion of the trial court judgment.

An arbitration proceeding between Bean and Middlebury had preceded this superior court action. That proceeding settled the contract breach issue between Bean and Middlebury. Since the stipulation submitting the issue to arbitration bound Bean and Middlebury to the arbitration result, Middlebury may not reopen the issue in this case. See also *R. E. Bean Construction Co.* v. *Middlebury Associates,* 139 Vt. 200, 205–06, 428 A.2d 306, 309–10 (1980). The judgment will be amended to dismiss the Middlebury cross-claim against Bean.

*Paragraph one of the judgment order is affirmed. Paragraph two is stricken, and a new paragraph 2 inserted to read:*

*2. In the event that Middlebury does not meet its obliga-*

*tion to pay Pike, Pike may obtain recovery against Bean in the amount of $115,651.13, plus interest at the legal rate from and after December 25, 1974, plus costs.*

*Paragraph three is stricken and a new paragraph three inserted, to read as follows:*

*3. The cross-claim of defendants Middlebury Associates and Middlebury Developers, Inc. against defendant R. E. Bean Construction Co., Inc. is dismissed, with costs to defendant R. E. Bean Construction Co., Inc.*

*The judgment order as so amended is affirmed.*
*Middlebury to bear costs in this Court.*

## On Reargument

Barney, C.J. In the original opinion in this case, we held that Pike could recover from Middlebury as a creditor beneficiary under Article 16.2 of the Contract Agreement. On reargument, Middlebury points us to Article 5.1.3 of the General Conditions, which provides:

Nothing contained in the Contract Documents shall create any contractual relation between the Owner or the Architect and any Subcontractor or Sub-subcontractor.

Middlebury argues that through this provision, Bean (the contractor) and Middlebury (the owner) have expressly provided that Pike would have no enforceable right against Middlebury under Article 16.2 of the Agreement.

Middlebury overlooks Article 1 of the Contract Agreement which provides, "If anything in the General Conditions is inconsistent with this Agreement, the Agreement shall govern." Under Article 16.2, Middlebury terminated the contract with Bean and took over management of the project itself. That article requires Middlebury to pay Bean for any unpaid "Cost of the Work" due Bean upon termination of the contract. The contract defines "Cost of Work" as "costs necessarily incurred in the proper performance of the Work *and paid by the Contractor.*" (Emphasis added.) Article 14.2.1 of the General Conditions further allows Middlebury to withhold the amounts that Bean owed its subcontractors but had not paid, including

Pike, until the work was finished. Finally, under Article 16.2 Middlebury assumed and became liable for Bean's obligations to its unpaid subcontractors. It would be inconsistent with Article 16.2 to allow Middlebury to take over the project, assume Bean's liability to its subcontractors, withhold payment from Bean, and then prohibit Pike from suing Middlebury directly for the amounts which, under the contract, Middlebury owes directly to Pike. We hold that Article 5.1.3 of the General Conditions does not prohibit Pike from suing Middlebury directly, once Middlebury had terminated the contract.

This interpretation of the Contract Agreement and General Conditions does not negate the provisions of Article 5.1.3. As long as the contract is in effect, that article provides that the subcontractors have no recourse against the owner; they must look to the contractor for payment on a contract basis. Presumably, that is why a project owner hires a contractor, to manage the project and serve as a single entity with which it must deal. Under this contract, once the owner (Middlebury) terminates the contract with the contractor (Bean), however, the owner steps into the contractor's shoes, so to speak, and becomes primarily liable for the contractor's obligations to the subcontractors. Any other interpretation would be inequitable, since, once the contract is terminated, the owner is not required to pay the contractor, except for costs the contractor has paid out, until the project is finished. There is a rule of construction which, given a choice, prefers that interpretation of a contract which makes it fair and reasonable. 3 A. Corbin, Contracts § 552, at 210–11 (1960).

Middlebury next argues that, since Pike's rights as a creditor beneficiary are through Bean, Pike's right to recovery can be no greater than Bean's. It then points to Article 6 of the Contract Agreement, which provides that if the final project cost exceeds the contract cost, Bean shall bear the burden of paying the excess. It also points to Article 14.2.1 of the General Conditions, which provides that, if Middlebury terminates the contract, Bean "shall not be entitled to receive any further payment until the Work is finished," and Article 14.2.2 of the General Conditions which provides that if the project costs exceed the contract costs, "the Contractor [Bean] shall pay the difference to the Owner [Middlebury]." Only if the final cost is less than the contract cost is Bean entitled to payment,

and then only the excess of the contract cost over the final cost.

The trial court found that the final cost of the project exceeded the contract cost by $4,619.53. Therefore, says Middlebury, Bean has no right of recovery against Middlebury, and neither does Pike.

Our reading of these sections only reinforces our view that Middlebury is primarily liable. Once Middlebury terminated the contract, the relationship among the parties shifted. Middlebury was no longer obliged to pay Bean until the project was completed. The purpose of that provision is so that Middlebury can pay the subcontractors directly. Indeed, Bean will get no payment until the project is completed and *paid for*, and then only if there is any excess between the project cost and the contract cost. We can see no other reason for the provisions. Middlebury argues that if Pike is allowed to recover against it, then Bean would benefit from its own alleged default. It argues that its cost for the project would exceed the guaranteed maximum cost, and that it would have no recourse against Bean for the excess payments. That is not true. Under Article 14.2.2, mentioned above, if the project cost exceeds the contract cost, Bean is liable to Middlebury for the excess. Middlebury, not the subcontractors, is responsible for obtaining the excess from Bean. The contract does not contemplate that Middlebury can leave the subcontractors fighting for a limited pool of money. The provisions do not prevent Pike from recovering from Middlebury, and no reason to do so exists.

Finally, Middlebury points out, correctly, that this Court decided the case on legal grounds not raised below or raised on appeal. It should be pointed out here, and, indeed, a review of the record makes it abundantly clear, that the legal basis for the result reached derives directly from the facts already developed in the proceedings, and the purpose of the grant of reargument was to allow the parties to make clear their contentions with respect to the legal proposition advanced in the opinion as filed. There has been no denial of opportunity to any of the parties to make legal argument on any issue.

Middlebury distinguishes *Sexton* v. *Greer, supra,* on the basis that in *Sexton* the party against whom the decision was affirmed was the plaintiff, who had the burden of proof. Al-

though this may be a legal circumstance in aid of the result, it is not the governing concern.

Earlier cases have affirmed judgments in favor of plaintiffs. *Simpson* v. *Central Vermont Ry.*, 95 Vt. 388, 115 A. 299 (1921); *Wood* v. *James,* 93 Vt. 36, 106 A. 566 (1918). As the Court said in *Wood:*

> The result reached in this case is unaffected by the fact that the question upon which the case is made to turn was not raised and presented on the argument before us; for the rule is that the judgment below should be affirmed if it can be on any legal ground, whether it be on a ground presented in argument or not. (Citations omitted.) The rule is otherwise where the consideration of a ground not raised below, and presented in argument before this Court, might, in certain circumstances, reverse the case; for the rule is that an exceptor has the burden of making the record show affirmatively that error was committed below (citations omitted), and exceptions not briefed are waived.

*Id.* at 42–43, 106 A. at 569. The Court in *Simpson* pointed out that the issue did not even have to be raised below. *Id.* at 394, 115 A. at 301–02.

*Let full entry be certified to the Addison Superior Court.*