209 N.J. Super. 367 (1986)
507 A.2d 754
INSULATION CONTRACTING AND SUPPLY, A/K/A I.C.S., PLAINTIFF-APPELLANT,
v.
KRAVCO, INC., EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, MILLMAK ASSOCIATES AND COPE CONSTRUCTION COMPANY, DEFENDANTS-RESPONDENTS, AND PEYTON INTERIOR CONTRACTORS, INC., PEYTON CONTRACTORS, INC. AND COPE LINDER ASSOCIATES, DEFENDANTS.
GAR EQUIPMENT CORPORATION, PLAINTIFF-APPELLANT,
v.
MILLMAK ASSOCIATES, MILLMAK ASSOCIATES JOINT VENTURE AND KRAVCO, INC., DEFENDANTS-RESPONDENTS, AND PEYTON INTERIOR CONTRACTORS, INC., AND PEYTON CONTRACTORS, INC., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 7, 1986.
Decided April 21, 1986.
*368 Before Judges GAULKIN, DEIGHAN and STERN.
*369 Edward D. Sheehan argued the cause for appellant Insulation Contracting and Supply (DuBois, Sheehan, Hamilton & DuBois, attorneys; Edward D. Sheehan, on the brief and reply brief).
Walter J. Fleischer, Jr. argued the cause for appellant GAR Equipment Corporation (Shanley & Fisher, attorneys; Walter J. Fleischer, on the brief).
Steven K. Kudatzky argued the cause for respondents (Tomar, Parks, Seliger, Simonoff & Adourian, attorneys; Steven K. Kudatzky, on the brief and letter brief).
The opinion of the court was delivered by DEIGHAN, J.A.D.
These consolidated appeals present a common legal issue: When the general contractor on a construction project terminates one of its subcontractors for non-performance, does the general contractor (or project owner) thereby become liable to pay the terminated subcontractor's subcontractors who fully performed its subcontract? The trial judge in each case denied recovery. We affirm.
The facts are not in dispute. On October 1, 1981 Millmak Associates (Millmak), a joint venture consisting of co-venturers Piermak Associates (Piermak) and Equitable Life Assurance Society of United States (Equitable), entered into a written construction contract with Kravco, Inc. (Kravco), for the construction of "Ocean One," a shopping mall on Millmak's pier along the Atlantic City Boardwalk. Under the construction contract, Kravco was the general contractor and Cope Linder Associates (Cope Linder) the architect. Under a separate agency agreement, Cope Construction Company (Cope Construction) was to assist Kravco in the performance of its duties as general contractor.
On May 6, 1982 Kravco entered into a written subcontract with Peyton Contractors, Inc. (Peyton), to install framing and wallboards as well as to do painting and related work. On *370 October 27, 1982 Peyton entered into a sub-subcontract with plaintiff Insulation Contracting Supply to supply and install insulation for a consideration of $215,000 including extras. Plaintiff undertook its sub-subcontract and on January 28, 1983 received a $30,000 payment from Peyton.
On February 25, 1983, because of a default in performance, Kravco terminated the subcontract with Peyton. At that time plaintiff had substantially completed its sub-subcontract and three days later, on February 28, 1983 plaintiff fully completed its obligation under the contract. Plaintiff's work was accepted and was not a factor involved in the default of Peyton by Kravco.
Plaintiff received no further advances under its subcontract and consequently filed a complaint in the Law Division, Atlantic County against Peyton, Kravco, Equitable, Cope Linder and Cope Construction for $185,000, the balance due under its sub-subcontract. Kravco, Equitable, Millmak, Cope Linder and Cope Construction moved for a summary judgment supported by affidavits of Myles H. Tanenbaum, a general partner of Piermak and Richard Spoenlein, a project manager employed by Cope Construction. Plaintiff filed a cross-motion for summary judgment and Peyton filed an affidavit executed by its controller Gary Wertheimer, to "clarify certain facts with regard to the two pending Cross Motions." On August 10, 1984, after argument,[1] Judge Perskie delivered an oral opinion, granting defendants[2] summary judgment dismissing the complaint and denying plaintiff's cross-motion for summary judgment. Subsequently, on December 24, 1984 a consent judgment for $185,000 plus interest was entered in favor of plaintiff against Peyton.
*371 GAR Equipment Corporation (GAR), also a sub-subcontractor of Peyton, instituted a separate action against Millmak, Kravco and Peyton in the Law Division, Middlesex County. The procedural and factual backgrounds are essentially the same as those in the appeal of Insulation Contracting and Supply. Following cross-motions for summary judgment in that matter, on October 15, 1984 Judge Reavey granted defendants' and denied GAR's motion. On March 5, 1985 a consent judgment was entered in favor of GAR and against Peyton for $20,534.03.
Plaintiff presents the following issues:
I. BY ELECTING TO TERMINATE PEYTON (THE SUB-CONTRACTORS), DEFENDANTS-RESPONDENTS (THE OWNERS-GENERAL CONTRACTORS) BECAME RESPONSIBLE TO PAY DIRECTLY THE INVOICES OF PLAINTIFF-APPELLANT (THE SUB-SUBCONTRACTOR).
II. THERE DOES EXIST PRIVITY OF CONTRACT BETWEEN PLAINTIFF-APPELLANT AND THE DEFENDANTS-RESPONDENTS IN THIS CASE ARISING FROM THE CONTRACT DOCUMENTS THEMSELVES.
III. THERE DOES EXIST PRIVITY OF CONTRACT BETWEEN PLAINTIFF-APPELLANT AND DEFENDANTS-RESPONDENTS SUFFICIENT FOR THE PURPOSE OF MAINTAINING THIS CAUSE OF ACTION AS A RESULT OF THE THIRD-PARTY BENEFICIARY STATUS OF THE PLAINTIFF-APPELLANT.
IV. PLAINTIFF-APPELLANT IS ENTITLED TO MAINTAIN A DIRECT CAUSE OF ACTION AGAINST DEFENDANTS-RESPONDENTS ON A THEORY OF UNJUST ENRICHMENT.

I.
In support of its first contention plaintiff relies upon Pike Industries, Inc. v. Middlebury Associates, 140 Vt. 67, 436 A.2d 725 (1981), cert. den. 455 U.S. 947, 102 S.Ct. 1446, 71 L.Ed.2d 660 (1982). In Pike, Middlebury, owner of a proposed shopping center, entered into a contract with Bean, the contractor for construction of the shopping center. 140 Vt. at 69, 436 A.2d at 726. Bean entered into a subcontract with Pike for paving work at the center. On November 11, 1974, after Pike completed its paving contract, Middlebury terminated the contract with Bean and took over the project under a provision in *372 the prime contract. Middlebury never paid Bean under the prime contract and as a result, when Pike was not paid for its services under the sub-subcontract, it instituted suit against both Bean and Middlebury. Ibid.
Article 16.2 in the prime contract between Middlebury and Bean provided that, if Middlebury terminated the contract,
the Owner [Middlebury] shall further assume and become liable for obligations, commitments and unsettled claims that the Contractor [Bean] has previously undertaken or incurred in good faith in connection with [the project]. [Pike, 140 Vt. at 70, 436 A.2d at 727].
Chief Justice Barney, speaking for the Vermont Supreme Court held that under Article 16.2 of the contract Middlebury was liable to Pike:
By terminating the [Middlebury-Bean] contract, Middlebury assumed Bean's previously incurred obligation to pay Pike according to the [Bean-Pike] subcontract. Middlebury thereby owed a duty to Bean to pay Bean's debts. Pike is a creditor beneficiary of that obligation [of Middlebury] and may enforce Middlebury's duty to pay Bean's debt to Pike.... Pike therefore has a direct action against Middlebury and may recover accordingly. [Pike, 140 Vt. at 73, 436 A.2d at 727].
[U]nder Article 16.2 [of the Middlebury-Bean contract] Middlebury assumed and became liable for Bean's obligations to its unpaid subcontractors.
... Under this contract [between Middlebury and Bean], once the owner (Middlebury) terminates the contract with the contractor (Bean), ... the owner steps into the contractor's shoes, so to speak, and becomes primarily liable for the contractor's obligations to the subcontractors. [Id. at 73, 436 A.2d at 728].
Plaintiff contends that the "basic principle" established by Pike is that, "[i]f a general contractor decides to terminate a sub-contractor, in so doing, the general contractor becomes responsible directly to the sub-sub-contractors for the value of their services rendered even though there never existed a direct written contract between the general contractor and those sub-sub-contractors." Contrary to plaintiff's contention, the holding in Pike was based, not on any "basic principle" of law, but upon the specific provision in Article 16.2 of the contract.
Plaintiff also points out that the wording of Article 16.2 in the Millmak-Kravco contract is substantially identical to Article 16.2 in Pike. And, based on this fact, plaintiff contends that Article 16.2 is "incorporated by reference" into the Kravco-Peyton *373 subcontract by Paragraph 1.5 in the subcontract. However, Paragraph 1.5 merely provides that:
The parties hereto agree that, for the purposes of this Subcontract, the official Contract Documents are those prepared by the Architect and on file in the Contractor's office. Subcontractor has examined and agrees to be bound by the Contract Documents insofar as applicable to this Subcontract and the Contract Work. [Emphasis supplied].
Paragraph 1.5 does not incorporate Article 16.2 and does not mean that either Millmak or Kravco "agreed to pick up after Peyton in the event Peyton defaulted on its obligations [to its subcontractors]" as contended by plaintiff.
Here, although Millmak approved the prime contract between Kravco and Peyton by an addendum under the signatures on the last page, it expressly disclaimed any liability:
The undersigned owner referred to above hereby approves this subcontract. By granting this approval owner does not assume in favor of subcontractor or any other party any of the obligations of the contractor hereunder.
Plaintiff next contends that Paragraph 7.2 in the Kravco-Peyton subcontract is similar to Article 16.2 in Pike and establishes a contractual privity with either Kravco or Millmak. However, Paragraph 7.2 merely gives Kravco the right to terminate its contract with Peyton if Peyton defaults in performance of its duties under the contract and requires Kravco to pay Peyton for the work already performed pursuant to the contract. There is no provision in Paragraph 7.2 whereby Kravco agrees to assume Peyton's obligations in case of default nor does it incorporate any provision from the prime contract from which such an agreement may be inferred.
Plaintiff also seeks to establish a contractual relationship with defendants based on Paragraph 23 of the Kravco-Peyton contract. That provision states that if Kravco terminates its agreement with Peyton, Kravco will be responsible to Peyton "only for the amount of the actual cost of labor and material which has been expended by Subcontractor or for which liability has been incurred ... less any proper deductions and charges which Contractor may have against Subcontractor." The provisions of Paragraph 23 can be of no solace to plaintiff.
*374 According to the affidavit of Tanenbaum, the Kravco-Peyton contract after change orders was in the sum of $2,152,517. Millmak, through Kravco, paid Peyton $1,420,382 before the contract was terminated. It then paid replacement contractors the balance due to Peyton under the subcontract at the time of termination plus an additional amount of $560,208.45. Millmak also contends that it incurred additional indirect costs as a result of Peyton's nonperformance of its contract.
It is interesting to note that the Vermont Supreme Court in a subsequent case denied recovery on substantially similar facts as those in Pike except that there was no provision whereby the owner or contractor would "assume and become liable for obligations, commitments and unsettled claims that the contractor had previously undertaken or occurred in good faith" as was contained in Article 16.2 in the prime contract in Pike.
In Frank W. Whitcomb Const. Corp. v. Cedar Const. Co., 142 Vt. 541, 459 A.2d 985 (1983), the general contractor Cedar was terminated by the owner Westway Mall. Plaintiff Whitcomb, a subcontractor who was not fully paid by Cedar instituted an action against the owner Westway. Westway had already paid Cedar all the monies due to it under the general contract.[3] In denying recovery to the subcontractor, the Vermont Supreme Court, again through Chief Justice Barney, distinguished Pike:
Nor can it be argued that there could be any third party beneficiary concept involved, since the contract in this case specifically negates it. See generally, Pike Industries, Inc. v. Middlebury Associates, 140 Vt. 67, 436 A.2d 725 (1981).
Thus, there is no contractual relationship on which to premise recovery, nor any equitable interest supporting enforcement of the judgment. [142 Vt. at 546, 459 A.2d at 989].
In the absence of a contractual provision to the contrary, Kravco, by terminating its contract with Peyton, did not incur liability to pay plaintiff on its sub-subcontract.

*375 II.
Next, plaintiff contends that there is a "privity of contract" between plaintiff and defendants "arising from the contract documents themselves or alternatively that it is a third-party beneficiary of the contract between Peyton and Kravco, as well as the contract between Kravco and Millmak." Plaintiff candidly admits that the only case on point is Pike Industries, Inc. v. Middlebury Associates, supra, which would place Kravco in the "shoes" of Peyton. Pike, 140 Vt. at 69, 436 A.2d 726.
In Pike Industries Article 16.2 explicitly provided that the owner "shall further assume and become liable for the obligations, commitments and unsettled claims [of] the contractor." The court held that: "Pike is a creditor beneficiary of that obligation and may enforce Middlebury's duty to pay Bean's debt to Pike." Pike, 140 Vt. at 70, 436 A.2d at 727. No such provision is found in the contract between Millmak and Kravco or between Kravco and Peyton.
In Broadway Maintenance Corp. v. Rutgers, 90 N.J. 253 (1982), the Supreme Court held that the principle which determines the existence of a third-party beneficiary status "focuses on whether the parties to the contract intended others to benefit from the existence of the contract, or whether the benefit so derived arises merely as an unintended incident of the agreement." Id. at 259. In order to determine the intent, the Supreme Court at 90 N.J. 259 adopted the test enunciated in Brooklawn v. Brooklawn Housing Corp., 124 N.J.L. 73, 76-77 (E. & A. 1940): "Thus, the real test is whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts; and the fact that such a benefit exists, or that the third party is named, is merely evidence of this intention."
Here, there is nothing in the contract documents to indicate that plaintiff was to be a third-party beneficiary. Further, such is not the pattern or custom and usage within the building *376 trade. In Hiller & Skoglund, Inc. v. Atlantic Creosoting Co., Inc., 40 N.J. 6, 24 (1963), Justice Hall acknowledged the sequential chain of payment in the construction industry:
The prime contractor expects to pay his subcontractor from installment payments received from the owner and the materialman depends on the subcontractor to make payment out of the money the latter has received. Each party in the chain fully realizes what business practice requires of him and business stability depends on conformity even when the going becomes rough. The law should be framed accordingly.

III.
Plaintiff contends that it is entitled to maintain a direct cause of action against defendants on the theory of "unjust enrichment based on quasi-contractural liability."[4] A "quasi-contract" is created by law, for reasons of justice without regard to the expressions of assent by either words or acts. It is invoked to prevent unjust enrichment of unconscionable benefits or advantage. West Caldwell v. Caldwell, 26 N.J. 9 (1958). Quasi-contracts are not contractual obligations in the true sense because there is no agreement. The obligation arises not from the consent but from law or natural duty. This duty rests not only upon the equitable principle of unjust enrichment but also on the principle that whatsoever it is certain a man ought to do, the law supposes him to have promised to do. In the case of actual contracts the agreement defines the duty, while in the case of quasi-contract the duty defines the contract. Callano v. Oakwood Park Homes Corp., 91 N.J. Super. 105, 108 (App.Div. 1966). In fact, the obligations are sometimes imposed even against clear expressions of dissent. Power-Matics, Inc. v. Ligotti, 79 N.J. Super. 294 (App.Div. 1963).
Plaintiff focuses upon a statement in Callano:

*377 Quasi-contractual liability has found application in a myriad of situations.... However, a common thread runs throughout its application where liability has been successfully asserted, namely, that the plaintiff expected remuneration from the defendant, or if the true facts were known to plaintiff he would have expected remuneration from defendant, at the time the benefit was conferred. [91 N.J. Super. at 108-109; emphasis supplied].
Plaintiff then frames its arguments as follows:
The question which the Court must ask in deciding whether or not to apply a theory of unjust enrichment is whether or not at the time that ... [plaintiff] performed the services to the project in question, if... [plaintiff] had been aware that ... [Kravco] had terminated the contract of Peyton, its subcontractor, [on February 25, 1983] for reasons unrelated to the job performance of ... [plaintiff], and that at the time of said termination, the sub-contractor Peyton had not been fully compensated by ... [Kravco] for the invoices submitted by ... [plaintiff to Peyton], would ... [plaintiff] have expected to receive payment from . .. [Kravco or Millmak] directly.
Nevertheless, the factual scenario in Callano is identical to that in the present case. In Callano the plaintiff-nursery firm entered into a contract for planting shrubbery with the individual purchaser of a home under a contract of sale. Plaintiff had no dealings with, nor did he expect remuneration from the vendor when the shrubbery was planted. A short time after the shrubbery was planted the purchaser died and the defendant developer, without knowledge of the purchaser's failure to pay plaintiff, cancelled the contract of sale for purchase of the home and subsequently sold the property including the shrubbery. Id. at 107-108. This court noted that plaintiff had no dealings with the defendant developer, did not expect remuneration from it when the shrubbery was planted and there was no issue of mistake on part of the plaintiffs. It was held that under the circumstances, a plaintiff is not entitled to use the legal fiction of quasi-contract to substitute one promisor or debtor for another. Id. at 110.
Moreover, in addition to the expectation of a plaintiff for payment of services rendered from a defendant, the counterpart of the rule requires that there must be an objective expectation by defendant to pay plaintiff. As stated in Avery v. Sielcken-Schwarz, 5 N.J. Super. 195, 200 (App.Div. 1949):

*378 A defendant is obliged to pay for services rendered to him by the plaintiff if the circumstances are such that plaintiff reasonably expected defendant to compensate him and if a reasonable man, in the defendant's position, would know that the plaintiff was doing the work in confidence that defendant would pay him. The absence of these factors brings an opposite result. [Emphasis supplied].
The factual pattern in the present case falls precisely within § 110 of the Restatement, Restitution, (1937):
A person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person.
In this case plaintiff, who has conferred a benefit upon defendants as the performance of a contract with Peyton, is not entitled to restitution from defendants merely because of the failure of performance by Peyton. Otherwise stated: "If the party conferring a benefit does so pursuant to a contract with a third party, then non-performance by the other party to the contract does not entitle the party conferring the benefit to repayment from the recipient" on a theory of restitution or unjust enrichment. Stokes v. International Media Systems, 686 P.2d 1368, 1370 (Colo. App. 1984) citing § 110 of the Restatement, supra.
In Kemp v. Majestic Amusement Co., 427 Pa. 429, 234 A.2d 846 (1967), a tenant contracted with plaintiff to install heating and air conditioning equipment. When the tenant failed to pay, Kemp brought an action against the owner of the building to recover the value of the installation on the theory of unjust enrichment. The Court held that the owner Majestic was not unjustly enriched. Id. at 434, 234 A.2d at 847. The court based this holding upon the Restatement, Restitution:
Section 110 deals with a situation where a third party benefits from a contract entered into between two other parties. It provides that, in absence of some misleading by the third party, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third party. [Id. at 432, 234 A.2d at 846].
The court reasoned that
In contracting to perform the services in question, [Kemp] relied solely on the financial credit of [the tenant]. [Majestic] in no way induced [Kemp] to enter into the relationship. In such a situation, [Kemp] cannot shift the loss resulting *379 from its error in judgment to one who may have been indirectly benefited by the performance of these services. [Id. at 432-433, 234 A.2d at 848].
In La Chance v. Rigoli, 325 Mass. 425, 91 N.E.2d 204 (1950), defendant Rigoli, a tenant of defendant Cyr Oil Co., contracted with plaintiff to construct an addition to its filling station. Upon failure of the tenant Rigoli to pay, plaintiff brought an action against the tenant, as well as the owner Cyr Oil Co., for the balance due. In reversing the judgment against the owner Cyr Oil Co., the Massachusetts Court of Appeals, citing the Restatement, supra, § 110 analogized the situation to that in which a landowner has contracted to have a building erected on his land and his contractor defaults in payment to the subcontractor and held that:
On the failure of the contractor to pay the subcontractor, the latter may not recover against the owner. (case cited) The contracting party must look for payment to ... the one who is expected to pay and who is in fact expected to pay as a reasonable man should have expected to pay. [Id. at 426, 91 N.E.2d at 205].
See also Bryson v. Hutton, 41 N.C. App. 575, 255 S.E.2d 258 (1979) (plaintiff may not recover against wife who lived in the property for value of materials used by her husband to build the house citing Restatement, supra, § 110); Guldberg v. Greenberg, 259 Iowa 873, 146 N.W.2d 298 (1966) (plaintiff subcontractor may not recover for material and labor furnished in constructing a home on a lot owned by defendants); Chrysler Corp. v. AirTemp Corp., 426 A.2d 845 (Del.Super. 1980) (where plaintiff entered into contract with parent corporation it may not recover against the subsidiary corporation based "on quantum meruit, implied contract or restitution.") Id. at 855.
Plaintiff may not recover against defendants on the theory of unjust enrichment, restitution or quasi-contract.
GAR Equipment Corporation makes essentially the same arguments as plaintiff Insulation Contracting and Supply. We reject these contentions for the same reasons as set forth above. The summary judgments dismissing the complaints of plaintiffs Insulation Contracting and Supply and GAR Equipment Corporation are affirmed.
NOTES
[1] No attorney appeared on behalf of Peyton.
[2] On August 7, 1984 by virtue of a stipulation of facts, all claims against Cope Linder were dismissed with prejudice.
[3] As noted previously, here Millmak through Kravco paid not only the full amount due to Peyton on the contract, but at least $560,208.45 in excess of that amount in order to complete Peyton's subcontract.
[4] Restitution and unjust enrichment are both quasi-contractual in nature. Van Orman v. American Ins. Co., 680 F.2d 301, 311 (3 cir. 1982) citing Palmer, Law of Restitution, § 1.1 at 1-6 (1978).