700 A.2d 374

F. BENDER, INC. T/A FLAGSHIP CONSTRUCTION, PLAINTIFF–
APPELLANT, v. JOS. L. MUSCARELLE, INC. AND THE HERTZ
CORPORATION, DEFENDANTS–RESPONDENTS, AND TRI-
GEE DEVELOPMENT CO., INC., DEFENDANT.

Superior Court of New Jersey
Appellate Division

Submitted May 19, 1997—Decided July 16, 1997.

Before Judges DREIER and VILLANUEVA.

*Joseph A. Ferriero,* attorney for appellant (*Mr. Ferriero,* of counsel; *Mitchell L. Pascual,* on the letter brief).

*Peckar & Abramson,* attorneys for respondents (*Gerard J. Onorata,* of counsel and on the brief).

The opinion of the court was delivered by

VILLANUEVA, J.A.D. (retired and temporarily assigned on recall).

Plaintiff, F. Bender, Inc. t/a Flagship Construction, appeals from a summary judgment dismissing its complaint for a *quantum meruit* recovery for construction work it performed as sub-subcontractor at the Hertz facility at Newark International Airport. We affirm.

J.L.M. Phoenix Construction Corp. entered into a prime contract with The Hertz Corporation to construct a parking deck and customer service building at Newark International Airport. Jos. L. Muscarelle, Inc., the assignee of the contract, acted as the general contractor on the Project. As general contractor, Muscarelle entered into a subcontract agreement with the Tri–Gee Development Co., Inc. Pursuant to this subcontract agreement, Tri–Gee was to perform all of the concrete work for the Project. Tri–Gee, in turn, subcontracted a portion of its work on the Project to the plaintiff as a sub-subcontractor.

Plaintiff claims to have performed $139,733.50 worth of concrete foundation work at the Hertz facility. Apparently, a dispute arose between Tri–Gee and plaintiff concerning payments due to plaintiff from Tri–Gee for work completed by plaintiff on various projects, including the Hertz facility.

Due to Tri–Gee's failure to perform its subcontract agreement with Muscarelle adequately, Muscarelle terminated its agreement with Tri–Gee and hired another subcontractor to complete the concrete work on the Project. No contract exists between either Muscarelle and plaintiff or Hertz and plaintiff. Furthermore, neither Muscarelle nor Hertz has taken any action which could be construed as forming any type of contractual relationship with plaintiff.

When Tri–Gee refused to pay plaintiff, plaintiff sued Muscarelle and Hertz to obtain payment on a quasi-contractual basis. Tri–Gee was joined as a defendant, and a default has been entered against Tri–Gee.

Muscarelle and Hertz moved for summary judgment to dismiss the complaint against them. The trial court rejected plaintiff's claims of unjust enrichment and third party incidental beneficiary and relied upon *Insulation Contracting & Supply v. Kravco, Inc.*, 209 *N.J.Super.* 367, 507 *A.*2d 754 (App.Div.1986), as "controlling authority almost on all fours," in dismissing plaintiff's complaint.

On appeal, plaintiff argues that it is entitled to maintain a direct cause of action against Muscarelle and Hertz on a theory of unjust enrichment. Although the complaint alleges that a contractual relationship exists between plaintiff and the defendants, none exists. Therefore, plaintiff has no cause of action against either Muscarelle or Hertz based upon a contract.

We know of no case where the statutory protections given to a subcontractor or sub-subcontractor by filing a notice of intention or stop notice could be replicated by a common law claim based upon *quantum meruit*. Such a rule would create havoc in the construction industry. *See Insulation Contracting & Supply*

*v. Kravco, Inc., supra,* (denying similar reimbursement in a claim by a sub-subcontractor against the prime contractor after the subcontractor for whom the plaintiff had performed defaulted).

In this case, Hertz had an obligation to pay its contractor, and, Muscarelle, the contractor, had an obligation to pay its subcontractor, Tri–Gee, who in turn had an obligation to pay plaintiff, its subcontractor. When plaintiff performed, it had a claim only against Tri–Gee unless it filed a notice of intention or stop notice in compliance with the Mechanics' Lien Law. It is true that Hertz and/or Muscarelle may have received the benefit of plaintiff's work; however, Tri–Gee owes plaintiff for that work.

■ *Quantum meruit,* which plaintiff seeks, requires that there be unjust enrichment. *Callano v. Oakwood Park Homes Corp.,* 91 *N.J.Super.* 105, 108–109, 219 *A.*2d 332 (App.Div.1966). Here, there was no unjust enrichment.

Plaintiff, in effect, wants the court to impose a common law mechanic's lien (without an actual lien on the land), or at a minimum, responsibility on the owner and contractor to make payment to the sub-subcontractor, irrespective of the fact that the owner's obligations ran solely to the prime contractor and the prime contractor's obligations ran solely to the subcontractor. Plaintiff, in its actions and on appeal has ignored the Mechanics' Lien Law, *N.J.S.A.* 2A:44–64 through 2A:44–124.1 (replaced effective April 22, 1994, with the Construction Lien Law, *N.J.S.A.* 2A:44A–1 to 2A:44A–38).

Plaintiff had every opportunity to protect itself. As stated in *Callano v. Oakwood Park Homes Corp., supra,* "[r]ecovery on the theory of *quasi*-contract was developed under the law to provide a remedy where none existed." 91 *N.J.Super.* at 110, 219 *A.*2d 332. The *Callano* court noted that the plaintiff had a remedy of bringing an action against the estate of the original party with whom it had contracted. *Ibid.* So too in this case. Plaintiff could have filed a notice of intention under *N.J.S.A.* 2A:44–71 and thereafter filed a notice of refusal to pay claim under Section 77,

serving the same upon the owner under Section 79. If Hertz's contract had been filed with the County Clerk, for which there is no evidence in the record, no notice of intention would have been effective, *N.J.S.A.* 2A:44–75, but plaintiff still could have filed a stop notice, *Shore Block Corp. v. Lakeview Apartments*, 377 *F*.2d 835 (3rd Cir.1967), which could have resulted in plaintiff's obtaining some form of lien. Plaintiff, however, failed to avail itself of these statutory procedures.

Additionally, even if plaintiff had followed the prescribed statutory procedures, Muscarelle and Hertz would have been protected as to all payments made in good faith before they received any of the statutory notices. *N.J.S.A.* 2A:44–81. If the court were to adopt plaintiff's position, this protection for the owner would disappear. Owners would be liable for all of the contractor's debts for labor and materials used in the construction on the owner's property, irrespective of the owner's losses. Conceivably, every subcontractor could claim that the owner's payments to the prime contractor were for other work and that the owner owed each of them on a *quantum meruit* basis for the benefits they had conferred. Where the owner or contractor, as here, had to pay to complete the work, they would, in effect, pay twice. This in inherently unfair, especially where the-sub subcontractor had an effective protective remedy.

Plaintiff failed to protect its rights by filing an appropriate mechanic's lien. To permit the imposition of a lien in a case like this, where a plaintiff has failed to comply with the Mechanics' Lien Law, would as we noted earlier, disrupt the construction industry. Most subcontractors, sub-subcontractors and even laborers and materialmen, confer benefits upon the job. If they all had the ability to recover quasi-contractual claims against the owners or prime contractors, both they and lenders would find it impossible to monitor payments on the job. For example, a lender must know that when a construction advance is made it is made for specific work and that the payment to the prime contractor has covered the particular stage of construction, except

insofar as there may be mechanics' lien notices filed, in which case disbursement is not permitted until the liens are satisfied. If plaintiff has a dispute with the party with whom it contracted, it must resolve this problem without looking to those parties further up the chain, unless plaintiff has protected its rights by filing a mechanics lien. There might be some rare cases to justify equitable exceptions, but this is not the case here. The owner and the prime contractor appear eminently solvent, and either the payment has been made to Tri–Gee, in which case plaintiff's claim is against Tri–Gee, or, if the payment has not been made, plaintiff can still obtain its judgment (by default) against Tri–Gee and then, if necessary, execute on Tri–Gee's contractual right to a payment, if any, from the prime contractor, Muscarelle, or upon any other asset of Tri–Gee.

Affirmed.