711 A.2d 1363 (1998)
312 N.J. Super. 565
ONORATO CONSTRUCTION, INC., Plaintiff-Appellant,
v.
EASTMAN CONSTRUCTION COMPANY, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued May 27, 1998.
Decided June 22, 1998.
*1364 Carmine D. Campanile, Livingston, for plaintiff-appellant (Commisa & Campanile, attorneys; Mr. Campanile, on the brief).
Gregory T. Keller, Livingston, for defendant-respondent (Stein, Bliablias, McGuire, Pantages & Gigl, attorneys; Mr. Keller, on the brief).
Before Judges DREIER and KEEFE.
The opinion of the court was delivered by
DREIER, P.J.A.D.
Plaintiff, Onorato Construction, Inc., a subsubcontractor which constructed parking lot curbing, appeals from a summary judgment dismissing plaintiff's claim against defendant, Eastman Construction Company, the general contractor. Eastman, by way of subcontract, had retained J. Gram Construction Co., Inc. to perform site construction work on a project in Livingston. Gram, in turn, subcontracted a portion of the work to plaintiff. Plaintiff fully performed its work, resulting in an outstanding balance of $47,977.63 due to Onorato from Gram.
On September 29, 1993, plaintiff wrote to defendant notifying defendant of the amount due from Gram and informed Eastman that plaintiff had not been paid due to Mr. Gram's "personal problem." The letter requested defendant to hold Gram's retainage so that plaintiff could be paid. Defendant acknowledged receipt of this letter. The next day Gram wrote to defendant explaining that there was money owing to its subcontractors and suppliers and that there was "enough money owed to J. Gram from Eastman to pay everyone concerned in full." The letter requested Eastman to pay the subcontractors and suppliers. Gram stated that due to its current financial strains, the subcontractors and suppliers listed in the letter should "be paid either directly by Eastman or with joint checks." Plaintiff was one of the subcontractors listed in this letter, which defendant also admits receiving. A few days after receiving this letter, defendant faxed the following message to plaintiff:
This is to confirm our telephone conversation of 10-7-93 in regards to issuing joint checks between your company and J. Gram Const. for monies owed by J. Gram. This will be accomplished over the next few months.
All monies owed to J. Gram will not be paid to them directly.
Thereafter, in accordance with its undertaking, Eastman issued a joint check for $15,000 payable to "J. Gram Construction Co., Inc. and Onorato Construction Inc." Plaintiff received the check and deducted the $15,000 from the outstanding indebtedness. With other minor adjustments that had been made, the balance due to plaintiff from Gram was $30,981.63, and on November 11, 1993, plaintiff wrote to defendant notifying defendant of this balance due. On December 15, 1993, plaintiff again wrote to defendant, noting that the same balance due was outstanding, and requested "any help you can give us regarding payment of this balance, $30, 981.63." Defendant at no time disavowed its previous undertaking to pay plaintiff or issue joint checks, or its promise not to pay Gram directly.
Although there is no certification asserting any express forbearance on the part of plaintiff from instituting any legal action to secure the acknowledged debt from Gram and executing on the fund being held for Gram's benefit by defendant, it is reasonably inferable from the facts that no such action was instituted in reliance on defendant's oral and written undertaking to protect plaintiff. We accord plaintiff this inference because on this motion for a summary judgment by defendant, plaintiff was entitled to all reasonable inferences from the facts alleged. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995).
On August 16, 1994, Gram submitted a final application to defendant for payment of $60,521.05. After making deductions not relevant here, defendant on December 22, 1994, paid Gram directly the sum of $47,907.81 as full and final payment for the project. Inexplicably, and in direct derogation of its undertaking to plaintiff and other suppliers or subcontractors, this payment was made neither *1365 to the suppliers and subcontractors nor by joint check. The parties have acknowledged that Gram is insolvent, leaving plaintiff (and apparently the other suppliers) without recourse other than making this claim against defendant.
Plaintiff advanced various theories upon which defendant should be liable for its undertaking. Among these are that defendant's debt to Gram had been assigned to plaintiff; that plaintiff was the third-party beneficiary of defendant's agreement to pay; that there was a quasi-contractual relationship under which plaintiff should be paid, and the like. The trial judge focused upon the apparent lack of consideration for defendant's undertaking to pay plaintiff. He stated:
The situation here is clear. Onorato was concerned about receiving its payment from Gram because of Gram's precarious financial position. And in order to satisfy those concerns, Gram instructed Eastman to make payment directly to Onorato, or to make payment by a check payable to both Gram and Onorato. There was one [joint] check which was issued by Eastman, at Gram's request.
The mere payment of such request, in my opinion, does not create a new contract in favor of Onorato or an obligation from Eastman to Onorato, since there was no indication of any consideration for the assumption of such an obligation. Eastman was only obligated to pay Gram for the work performed, but was not obligated to Onorato.
On appeal, plaintiff has again advanced these theories, adding other bases such as an equitable lien and the like. In plaintiff's brief, after referring to one of its legal theories, it summarizes its argument in a terse statement:
Here, Eastman assumed a duty to pay Onorato directly or by joint check. That duty was breached. As a result of that breach Onorato was damaged. Eastman is therefore liable to Onorato.
The simplicity of this statement is appealing, and has caused us to look beyond the legal theories advanced by plaintiff and to focus on basic contractual principles which provide a clear basis upon which summary judgment should have been denied defendant. Whether summary judgment is due plaintiff must await the remand hearing, because the issue is not before us.
There appears to be little question that by the correspondence among the three parties, defendant knew and agreed that the payments due to Gram from defendant were to be paid either directly or by joint checks to plaintiff and the other subcontractors. The direction by Gram approximates an assignment, but falls short because of (1) the wording of the request, without words of assignment, and (2) defendant's option to pay by joint check, leaving the rights between Gram and plaintiff to further adjustment between them. The portion of the funds to be payable to plaintiff and the other subcontractors was clearly identified in Gram's letter to defendant. Furthermore, plaintiff owed no services to Gram. Similarly, Gram performed all its obligations for defendant. Therefore the total amount due (with certain adjustments not relevant to this case) was fixed. The problem with the assignment theory might have been resolved by a brief factual determination whether the language of the letter, taken in conjunction with the prior correspondence, could reasonably have been understood as an absolute direction to pay. If it was, then plaintiff became the assignee of that portion of the payment described in the correspondence, and any payment to the assignor would have been improper. See Spilka v. South Am. Managers, Inc., 54 N.J. 452, 462, 255 A.2d 755 (1969). If defendant was concerned that it might have been held liable both to plaintiff and Gram, defendant could either have used the option afforded in the letter and protected itself by making the payment by joint check, or defendant could have availed itself of an interpleader, R. 4:31, and paid the money into court.
Defendant's written response and its payment of the first $15,000 to plaintiff are strong evidence that it understood Gram's letter and accepted its obligation to pay plaintiff rather than Gram. This evidence, if not taken as strongly supporting a summary judgment in favor of plaintiff rather than *1366 defendant, was clearly sufficient to defeat a summary judgment in favor of defendant.
An additional theory of liability is that the exchange of letters created an enforceable contract for defendant to pay plaintiff the balance claimed. To this, defendant has answered and the trial judge concurred that there was no consideration supporting defendant's promise to pay contained in the fax sent by it to plaintiff. There are two answers to this contention. The first is that there is at least a factual issue that plaintiff's forbearance from legal action against Gram (to be followed by an execution against the fund) during the fourteen months between defendant's promise not to pay Gram directly and its payment to Gram, was sufficient consideration to support a contractual remedy. Consideration may be either a benefit to the promisor or a detriment incurred by the promisee. Continental Bank v. Barclay Riding Academy, Inc., 93 N.J. 153, 170, 459 A.2d 1163, cert. denied, 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 684 (1983). Forbearance from legal action is well recognized as a detriment sufficient to support a contract. Even where the forbearance is not directly stated as consideration, it may exist by implication. 2 Corbin on Contracts § 5.22 (Perillo & Bender ed.1995). The fact that the consideration might flow from a third party also is insufficient to defeat a finding that there was an enforceable contract. Massey v. Del-Valley Corp., 46 N.J.Super. 400, 404, 134 A.2d 802 (App.Div.1957).
The second answer to the claim of lack of consideration is that defendant can be found estopped from asserting such a defense. The concept of promissory estoppel is well established in the law. Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank, 163 N.J.Super. 463, 479, 395 A.2d 222 (App.Div.1978), certif. denied, 79 N.J. 488, 401 A.2d 243 (1979); Restatement (Second) of Contracts § 90(1) (1979). See generally Guidebook to Chancery Practice in New Jersey, 23-24 (I.C.L.E. 4th ed.1997) (citing to Friedman v. Tappan Dev. Corp., 22 N.J. 523, 126 A.2d 646 (1956)). In Friedman, the Supreme Court noted:
It is generally held that the principle of estoppel is applicable to in futuro promises, if subject to estoppel at all, only where they relate to an intended abandonment of an existing right, and are made to influence others who in fact are induced thereby to act or to forbear: e.g., where one who has induced his creditor to forbear to bring action upon his claim by a promise of payment or a promise not to plead the statute of limitations as a defense, even though such forbearance was not requested as consideration for the promise, and though the new promise (because not in writing or for some other reason) was not binding as such. In those cases, "no new right is created. The court does not sustain an action on the promise; it reaches the desired result by allowing a defense to an action or allowing an original right to be enforced by merely prohibiting the interposition of a defense."
[22 N.J. at 537, 126 A.2d 646 (quoting from Williston on Contracts § 139 (rev. ed.))].
The Restatement's explanation of promissory estoppel in a case such as this is found in § 90(1):
(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.
Comment b explains the factors to be balanced, and that the principle of promissory estoppel is flexible.
The promisor is affected only by reliance which he does or should foresee, and enforcement must be necessary to avoid injustice. Satisfaction of the latter requirement may depend on the reasonableness of the promisee's reliance, on its definite and substantial character in relation to the remedy sought, on the formality with which the promise is made, on the extent to which the evidentiary, cautionary, deterrent and channeling functions of form are met by the commercial setting or otherwise, and on the extent to which such other policies as the enforcement of bargains and *1367 the prevention of unjust enrichment are relevant.
Comment c to this section further envisions reliance by third persons to a contract:
If a promise is made to one party for the benefit of another, it is often foreseeable that the beneficiary will rely on the promise. Enforcement of the promise in such cases rests on the same basis and depends on the same factors as in cases of reliance by the promisee.
There is no question that defendant knew a fixed sum that it held was payable to plaintiff. Defendant acknowledged this in writing and agreed to pay plaintiff. It further knew by two additional letters from plaintiff that Gram had not satisfied its obligations and that plaintiff was still looking to defendant to protect plaintiff's rights under the terms of defendant's earlier undertaking. Although there may be some factual issues of which we have not been apprised, it appears that the elements of promissory estoppel are present here. At least there is a sufficient factual basis to defeat defendant's motion for summary judgment.
Defendant has argued that this case is no different from F. Bender, Inc. v. Jos. L. Muscarelle, Inc., 304 N.J.Super. 282, 700 A.2d 374 (App.Div.1997), or Insulation Contracting & Supply v. Kravco, Inc., 209 N.J.Super. 367, 507 A.2d 754 (App.Div.1986). We disagree. Although here as in those cases there was no privity between plaintiff and defendant until the exchange of correspondence, it is precisely this correspondence that differentiates the case before us from Bender and Insulation Contracting. Plaintiff here is not seeking an "end run" around the mechanics lien laws. Although generally a subcontractor or materialman has no right to direct payment from the general contractor or owner where the requisites of establishing a mechanics or a materialman's lien have been ignored, Bender, 304 N.J.Super. at 287, 700 A.2d 374, there are different operative facts before us. Insofar as plaintiff's claims are based upon defendant's additional undertakings at the behest of plaintiff and Gram, the case before us is readily distinguishable from those cited by defendant.
The summary judgment entered in favor of defendant is reversed and this matter is remanded to the Law Division for further proceedings.