[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 197 
This is an action for compensation for legal services rendered. The first count pleads an express contract; the second count, an implied contract. Judge Knight, in the County Court, directed a verdict for defendant and plaintiff appeals. *Page 198 
The defendant was involved in extensive litigation during the period 1930 to 1936. Her attorneys were the New York firm of Avery Whiting, of which the senior member was Mr. Brainard Avery, the plaintiff's father. The plaintiff was admitted to the bar of New York at the end of 1930, was immediately employed by his father's firm and put to work on the defendant's business. In February, 1935, he resigned from Avery Whiting and struck out for himself in a couple of offices that were part of or adjoined the suite of Avery Whiting, and which they sublet to him. That firm, or Brainard Avery, continued in general charge of defendant's legal matters and plaintiff continued giving a great part of his time to them, just as he had before February.
The defendant has a son, Alex Sielcken, who had general charge of her business as her attorney in fact. He and plaintiff knew each other well and usually saw each other several times a week. About the time that plaintiff left the employ of Avery Whiting, he told Alex that he was doing so and "that I would have to have some arrangement for compensation in these matters (defendant's litigation) if I was to continue." There were other conversations between them on the same subject, continuing into April, 1935, but what was said does not appear. On April 9th, Alex wrote plaintiff, speaking highly of his work on defendant's affairs and saying, "Your father has asked for an independent arrangement to you, and I am glad to enclose a copy of what has been worked out between him and me." The enclosure was a contract between Brainard Avery and defendant, in the form of a letter addressed to her and, at the foot, her acceptance endorsed by her son. Whether Brainard contracted on behalf of his firm, or for himself alone, is not certain and is immaterial. It is one paragraph of this letter on which plaintiff bases his action, arguing that it is a covenant by defendant of which he was a third party beneficiary. This paragraph reads:
"Albert Avery is overworking himself in your interests. It is important that his enthusiasm and interest in the heavy work he is doing, both in the Sielcken reference and in the Toledo litigation, be recognized by you. We suggest that you authorize us to carry his *Page 199 
time as a disbursement at the rate of $100 per week, beginning March 15th, to continue until the present proceedings have been submitted to the Surrogate for decision."
Plaintiff construes this as a promise by defendant to pay plaintiff at the rate of $100 a week. We do not. It might be construed as a promise by Brainard to pay plaintiff $100 a week, on which perhaps plaintiff could maintain an action against the personal representative of his father who is now deceased. The parties did not intend that plaintiff should be engaged by defendant either as an employee or as an independent contractor, or that defendant should pay plaintiff anything; they intended that defendant should pay Brainard Avery, in addition to the value of his services and the amount of his other out of pocket expenses, $100 a week to reimburse Brainard for the amount he paid or was supposed to pay plaintiff for such work on defendant's matters as his father might direct him to do. That is the meaning of the contract as we understand it.
The elder Avery, if his income dwindled, might default in paying the weekly sums of $100 to the plaintiff, unless the defendant, on her part, paid equal amounts as agreed to Brainard Avery, and in this sense we may say that plaintiff was a beneficiary of the contract. But he was only an "incidental beneficiary" without a right of action on the contract against defendant. A third party cannot maintain action on a contract where performance is due directly to the promisee and not to the third party. Rest. — Contr., § 174; Will. — Contr., § 402. If defendant breached the contract, Brainard Avery, the promisee, could recover but not his son. Furthermore, there is no evidence of any breach by defendant; she agreed to pay Brainard and is not shown to have defaulted.
The contract was made in New York and contemplated performance in that state. Substantive rights springing from the contract are measured by New York law. Hinkly v. Freick, 86 N.J.L. 281
(E. A. 1914). The question whether a third party can sue on the contract is one of substantive right — Has he a cause of action — and not one of procedure — How shall he enforce his cause? Our opinion *Page 200 
that the plaintiff has no cause of action on the contract seems to be supported by the New York cases to which counsel refer us. The more important of these are Lawrence v. Fox, 20 N.Y. 268
(1859); Seaver v. Ransom, 120 N.E. 639, 2 A.L.R. 1187
(1918); McClare v. Mass. Bonding, etc., Co., (N.Y.),195 N.E. 15 (1935); Filardo v. Foley Bros. (N.Y.),78 N.E.2d 480 (1948); Morgan v. Ebco Mach. Corp., 267 N.Y.S. 369 (App.Div. 1933).
In his second count, plaintiff alleges that at the special instance and request of defendant, he performed legal services for her of the value of $20,000. These are the same services already referred to. A few additional facts should be noted. Plaintiff was paid by Avery Whiting on account of his services $500 on September 4 and $100 on December 9, 1935. He was never paid anything by defendant. In January, 1936, he rendered to her a bill for $3,450. Thereafter he continued working on defendant's matters until December, 1936. The following July, he gave Alex Sielcken an informal computation of the total amount due him, $7,350. Defendant leans heavily on the rule that the existence of an express contract excludes an implied contract. Voorhees v.Woodhull, 33 N.J.L. 494 (E. A. 1869); Pericin v.Denburg's Modern Bakery, 130 N.J.L. 547 (E. A. 1943). That rule has full effect only when the parties to the express contract are the same as the parties to the action. Young Avery, the plaintiff, is not necessarily precluded from alleging an implied contract with defendant, simply because his father had an express contract with her.
A defendant is obliged to pay for services rendered to him by the plaintiff if the circumstances are such that plaintiff reasonably expected defendant to compensate him and if a reasonable man, in the defendant's position, would know that the plaintiff was doing the work in confidence that defendant would pay him. The absence of these factors brings an opposite result. For example — One who buys meat is not liable to the butcher's assistant who serves him. And a client is not obligated to the stenographer or junior lawyer who is an employee of the firm whom the client has retained. The *Page 201 
circumstances of the case before us — at least until the bill of January 2, 1936, was rendered — imply no promise by the defendant in favor of plaintiff, for not only might she properly assume that plaintiff was working for his father and not for her, but also no reasonable ground is shown for his expecting her to pay him. Price v. Hay, 24 N.E. 620 (Ill. 1890); In re HomeProtection, etc., Asso., 17 A.2d 755 (Pa. 1941).
The January bill I will now set out in full:
 Avery Whiting
 100 Broadway
Brainard Avery
Jay E. Whiting
George O. Castell
Albert G. Avery
 New York January 2, 1936
Mrs. Clara Sielcken-Schwarz, to Albert G. Avery, DR.
Statement of services in Surrogate's proceeding and Woolson
 Spice Co. litigation from March 15th, 1935 to date in
 accordance with agreement of April 9th, 1935, excluding
 however the week of October 6th, 1935, when absent from
 New York, ...... 40 1/2 weeks ........................... $4,050.00
Less payments on account made by Avery Whiting:
 September 4, 1935 ................................. $500
 December 9, 1935 .................................. 100
 ____ 600.00
 _________
Balance due January 1, 1936 ............................... $3,350.00
 Received Payment.

Plaintiff mailed the bill to Alex Sielcken Saturday, January 4th. Alex sailed for Europe Friday, January 10th, and did not return to New York until April. A year later, that is, after the services for which plaintiff sues were all completed, he discussed with Alex the question of liability. Plaintiff did not testify whether or not he ever talked with or heard from defendant or Alex about the January, 1936, bill until then. Alex first testified that he took the matter up with Brainard Avery, but not with plaintiff himself. Later, he testified that he did speak to plaintiff and told him he should render his bill to Avery Whiting. The jury might have accepted the first version and we will adopt it as the one more favorable to plaintiff. Defendant simply ignored the *Page 202 
bill rendered in January, 1936. Alex also testified, over the plaintiff's vigorous objection, that defendant paid Avery 
Whiting $20,000 for services and $21,000 for disbursements. Plaintiff testified, as I have mentioned, that he was paid for his services only the sum of $600 and that by Avery Whiting. On cross-examination he admitted that "there was an account for rent that I owed Avery Whiting." He was asked if he had not received from them in August, 1935, the sum of $1,666 but his counsel's objection was sustained.
Do these circumstances raise an obligation on the part of defendant to pay to plaintiff the reasonable value of his services rendered after January 4, 1936, that is, after her agent had received his bill, informing defendant of plaintiff's claim? If plaintiff rendered the services in question under contract with his father, or Avery Whiting, for a fee to be paid by them, the defendant's disregard of his bill does not fasten a liability on her. Lynn v. Agnew, 166 N.Y.S. 274; affirmed,123 N.E. 877 (1919). The concurrence of two factors is necessary to establish a case against her, first, circumstances that make reasonable an expectation on plaintiff's part that she pay him, and second, notice to her. The requirement of notice is met but not the other prop to plaintiff's case. He knew the exact terms of the contract between his father and defendant; he had received from Avery Whiting payment for six weeks pursuant to the contract. His bill of January 2, 1936, on the Avery Whiting letterhead carrying his own name as a member of the firm, showed that his services were performed "in accordance with" that contract. The complaint does not allege unjust enrichment or fraud or mistake. And nothing of that character has been proved. Plaintiff does not claim that defendant's silence after receiving his bill induced him to continue at work, or that if she had told she would pay Avery Whiting only and not him, that he would have quit. It would have been the safer course for Alex Sielcken to have immediately informed plaintiff that defendant would not pay, but his failure to do so does not make her liable.Rabinowitz v. Mass. Bonding, etc., Co., 119 N.J.L. 552 (E. A. 1937).
Judgment affirmed. *Page 203