846 A.2d 625 (2004)
368 N.J. Super. 369
GARDEN STATE LAND COMPANY, Assignee of Garden State Investment Group, Plaintiff-Respondent,
v.
The CITY OF VINELAND, Defendant/Third-Party Plaintiff-Appellant,
v.
Realty Asset Properties, Ltd., FUNB, as Custodian for D.H. Associates, and FUNB, As Custodian for National Tax Fund, Third-Party Defendants.
Superior Court of New Jersey, Appellate Division.
Argued February 4, 2004.
Decided April 26, 2004.
*626 Richard P. Tonetta, argued the cause for appellant.
Keith A. Bonchi, Atlantic City, argued the cause for respondent (Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill, attorneys; Mr. Bonchi, on the brief).
Before Judges KING, LISA and S.L. REISNER.
The opinion of the court was delivered by
LISA, J.A.D.
Defendant, City of Vineland (City), appeals from a final order of the Chancery *627 Division granting summary judgment in favor of plaintiff, Garden State Land Company (Garden State) and denying the City's cross-motion for summary judgment. Garden State initiated this action to quiet title to a parcel of real estate in Vineland, upon which it had foreclosed two tax title liens. Prior to commencement of the foreclosure action, the City caused to be demolished the structures on the property, which the City determined were unfit for human habitation, occupancy or use. After Garden State completed its foreclosure action, the City imposed a tax lien against the property for its demolition cost of $44,581.42. The final judgment in Garden State's foreclosure action recited an amount due of $20,287.47.
Because Garden State was not served with notice in the demolition proceeding, as required by statute, it contended in the quiet title action that the City's tax lien for the demolition cost was defective and could not properly constitute an encumbrance against its title. Judge Rafferty agreed and entered judgment in Garden State's favor. The judge fashioned an equitable remedy, by which the City was given two choices: (1) If the City wished to preserve its demolition lien, it would be required, within sixty days, to reimburse Garden State for the amount of the underlying liens which were foreclosed by Garden State, together with statutory interest on the liens and on any subsequent taxes paid by Garden State. The City would also be required to pay Garden State taxed costs. As a variation of this alternative, if the City wished to obtain title to the property, it would be further required to reimburse Garden State for its actual out-of-pocket expenses to complete the foreclosure action, in exchange for which Garden State would convey title by deed to the City. (2) If the City did not reimburse Garden State within sixty days, the City's demolition lien was to be declared invalid, and the City ordered to discharge it.
The judge entered an order staying the final judgment, with certain conditions agreed to by the parties, pending appeal. The City argues on appeal:
POINT I
THE TRIAL COURT'S DETERMINATION THAT TAX LIEN HOLDER IS A "PARTY IN INTEREST" AS A PERSON ENTITLED TO NOTICE OF HEARING BEFORE THE HEALTH OFFICER PURSUANT TO N.J.S.A. 40:48-2.5 IS AN ERROR. A "PARTY IN INTEREST" IS A PARTY WITH LEGAL INTEREST, NOT EQUITABLE INTEREST.
POINT II
A MUNICIPALITY HAS THE DUTY AND POWER TO DEMOLISH STRUCTURES WHICH ARE DANGEROUS TO HUMAN LIFE OR PUBLIC WELFARE PURSUANT TO N.J.S.A. 40:48-1.1 AND TO PLACE A LIEN TO RECOVER COSTS OF DEMOLITION AS WELL AS SUCH AN ACTION AT LAW AGAINST THE OWNER FOR THE DEBT. THERE IS NO STATUTORY REQUEST (sic) OF NOTICE TO PARTIES IN INTEREST UNDER N.J.S.A. 40:48-1.1.
POINT III
THE DEMOLITION OF DILAPIDATED STRUCTURES ON THE PROPERTY BY THE CITY OF VINELAND WITH KNOWLEDGE BY THE PLAINTIFF AMOUNTS TO UNJUST ENRICHMENT AND EQUITY REQUIRES REIMBURSEMENT TO CITY OF VINELAND OF REASONABLE COSTS ASSOCIATED WITH DEMOLITION.
We reject these arguments and affirm.
Garden State acquired two tax sale certificates covering the subject property. *628 The first, Certificate # 6208 dated November 19, 1996, was recorded in the county clerk's office on December 11, 1996, subject to a redemption sum of $3,341.91. The second, Certificate # 6317, dated October 8, 1997, was recorded in the county clerk's office on October 16, 1997, subject to a redemption sum of $571.72. The property covered by the certificates is 520 South Seventh Street in Vineland. The record owner of the property was Realty Asset Properties, Ltd. (Realty).
The property had apparently been used for commercial purposes as a bakery, and contained structures which were fifty to seventy-five-years old. The property had apparently been vacant since about 1991, and the structures had fallen into disrepair. On August 20, 1998, the City issued a complaint directed to Realty, informing it that, pursuant to a city ordinance, the condition of the building and premises at 520 South Seventh Street was defective, dilapidated, and in a state of disrepair and uncleanliness, and contained structural defects.
The complaint stated that "[t]he building in its present condition, without said repair, alteration, or improvements made same dangerous to the health and safety of persons on or near said premises." The complaint informed Realty that a hearing would be held on September 3, 1998 to determine whether the building and premises were unfit for human habitation, occupancy or use. The complaint further informed Realty it had the right to file an answer to the complaint and appear in person or otherwise at the hearing. The complaint was signed by the director of the City's department of health, and it was served on Realty at its address in Florida.
Realty did not respond or appear at the hearing. On September 4, 1998, the City issued an order requiring repair, alteration or improvement of the premises, in the absence of which removal or demolition would be required. More particularly, the order required that Realty obtain construction permits by October 5, 1998 and complete necessary repairs by March 5, 1999. If no construction permits were obtained by October 5, 1998, demolition would be required by November 4, 1998. The order concluded that in the event Realty failed to comply, "the undersigned may cause the subject building(s) to be removed or demolished, the cost of which demolition shall be a lien upon the property...." This order was also signed by the City's director of the department of health and served on Realty in Florida.
Realty continued to be non-responsive. The City took no further action over the next eight months. On May 3, 1999, the City's chief sanitary inspector issued a report describing the poor condition of the buildings. On May 26, 1999, the City filed in Superior Court a verified complaint seeking an order authorizing demolition of the structures on the property. Process was served only on Realty. On December 17, 1999, an order for judgment was entered, pursuant to N.J.S.A. 40:48-2.5, authorizing demolition.
The City advertised for demolition bids and awarded a contract. Demolition occurred in April 2000, twenty months after issuance of the original administrative complaint on August 20, 1998. The City incurred a demolition cost of $44,581.42. The City thereafter attempted unsuccessfully to sell the demolition lien, as a result of which the City acquired it. The City recorded the lien, which, with accrued interest and costs of sale was then in the amount of $45,553.15, in the county clerk's office on March 15, 2001.
Meanwhile, Garden State had been paying all taxes as they became due, and held its tax title liens for the required two years before it could commence its in personam *629 tax foreclosure action. It began the action on May 25, 2000. Final judgment of foreclosure was entered on December 21, 2000. It reflected an amount due as of May 25, 2000 of $20,287.45.
On February 4, 2002, Garden State filed its quiet title action. It sought a declaration that the City's demolition lien was invalid for failure to provide Garden State with notice of the initial administrative hearing before the department of health and of the Superior Court proceeding seeking and obtaining a demolition order. The City filed an answer and counterclaim in which it sought an order declaring its demolition lien valid and giving it priority. In the alternative, if the demolition lien was declared invalid, the City sought damages for reimbursement for the reasonable costs of demolition, on grounds of unjust enrichment. The City also filed a third-party complaint against Realty and another party, which was later dismissed, and which is not germane to this appeal.
The parties filed cross-motions for summary judgment. Garden State contended the demolition lien was invalid as to it because it was never served with process in the administrative or Superior Court proceedings. The City argued that Garden State was not a necessary party and was not entitled to service of process in those proceedings. Alternatively, the City argued that because the structures were not only unfit but unsafe, the City was statutorily authorized to proceed to demolish them on an emergent basis without notice. Finally, and also alternatively, the City contended that Garden State had actual notice of the City's plans to demolish the buildings and impose a lien for the demolition cost, and invalidation of the lien would result in unjust enrichment to Garden State.
With respect to its unjust enrichment argument, the City produced the affidavit of its tax collector, Carmen DiGiorgio, stating that prior to entry of the Superior Court order authorizing demolition, which was entered on December 17, 1999, DiGiorgio "had several conversations with Mr. Isadore May whom I know as counsel and principal for [Garden State]" and that DiGiorgio "made Mr. May aware of the City's intent to demolish the structure on 520 S. Seventh Street and knew his company had held two tax sale certificates." DiGiorgio further stated he "advised Mr. May that the matter had been brought before the Superior Court of New Jersey for an Order for Demolition and the cost of demolition would be a lien on the property." Finally, DiGiorgio stated that neither Mr. May nor any other representative of Garden State objected at any time to the process.
Garden State presented the certification of Isadore May. Although May repeated several times that Garden State never received written notice of the demolition proceedings, he did not deny receiving verbal notice as described by DiGiorgio. May further stated it was Garden State's intention to rehabilitate the structure, but Garden State was deprived of that opportunity because the City demolished the structure without formal notice to Garden State.
Judge Rafferty concluded that Garden State was a party in interest entitled to formal notice of the demolition proceedings and that the nature of the situation was not so emergent as to authorize demolition without notice. Further, the statutory provision relied upon by the City dealing with emergent situations does not, as the City argues, authorize demolition without notice, but provides an additional remedy of personal liability on the part of the property owner. Thus, the judge concluded that as to Garden State, the demolition lien was invalid.
*630 However, recognizing the potential inequity that could result from voiding the demolition lien in these circumstances, the judge fashioned an equitable remedy:
The results of [lack of formal notice and an opportunity to be heard given to the tax lien holder] in this case, I think, would seem to perhaps extinguish the municipality's demolition lien. I don't think that that would be the purpose of the tax lien statute or the demolition statute which creates a lien.
So if I look at this factual situation from an equitable standpoint, although I recognize that the municipality probably had already spent more money, I think that an equitable solution for the municipality in this case, due to the fact that no notice was given to the tax lienholder who satisfied the prior taxes, the equitable solution would be for the municipality to redeem the tax lien, in effect, to give back to the lienholder the funds that were expended, with the appropriate statutory interest.
It seems to me, even raising the fact that the municipality is probably already too deep into this property by the costs of the demolition, that for them to have the ability to redeem that lien gives them the opportunity to maintain their ownership of this property and at the same time gives the tax lienholder the benefit of their investment.
I think whether or not the tax lienholder agrees that the city is an appropriate person to redeem a lien, under the facts of this case I'm going to make a determination that the city is. I cannot think of any fairer way to deal with this situation.
The judge then ordered the remedy which we described at the outset of this opinion.
The City performed this demolition under the authority of its ordinance, which it adopted pursuant to the enabling legislation authorizing such ordinances. N.J.S.A. 40:48-2.5. The ordinance tracks the provisions of N.J.S.A. 40:48-2.5, and imposes the same procedures and obligations in conjunction with demolition proceedings. When the designated public officer determines that any building is unfit for human habitation, occupancy or use, that officer may issue a charge and "issue and cause to be served upon the owner of and parties in interest in such building a complaint stating the charges." N.J.S.A. 40:48-2.5(b). The notice must further designate a hearing date and location, and advise the owners and parties in interest of their right to file an answer and appear at the hearing. Ibid.
"`Parties in interest' shall mean all individuals, associations and corporations who have interests of record in a building and any who are in actual possession thereof." N.J.S.A. 40:48-2.4(e). The City contends that the word "and" in this definition should be read in the conjunctive, thus requiring that to qualify as a party in interest a party must possess an interest of record and also be in actual possession. Judge Rafferty rejected this construction, and so do we.
The structure of the provision militates against such a construction. The word "any" makes clear that what follows is a second and distinct category from that which preceded the word "and." Further, although the language of a statute is to be construed as written, "[t]he words `or' and `and' are ofttimes used interchangeably, and the determination of whether the word `and' as used in a statute should be read in the conjunctive or disjunctive depends primarily upon the legislative intent." Pine Belt Chevrolet, Inc. v. Jersey Central Power and Light Co., 132 N.J. 564, 578, 626 A.2d 434, 441 (1993) (quoting Howard v. Harwood's Restaurant Co., 25 N.J. 72, 88, 135 A.2d 161, 169 (1957)). The context of *631 the language and the words surrounding the disputed portion can be used to evidence an intention to create a disjunctive meaning. See Pine Belt Chevrolet, supra, 132 N.J. at 579, 626 A.2d at 441-42 (1993) (referencing State v. Duva, 192 N.J.Super. 418, 420-21, 470 A.2d 53, 54-55 (Law Div. 1983)). The use of the word "any" following "and" is evidence of such an intention.
The purpose of the statute is to provide adequate advance notice to any party having a readily ascertainable interest in the property, by virtue of its status as an owner, occupant, or interest holder of record. Such parties should be given the opportunity to contest the charge of unfitness of the structure or to make necessary repairs. If demolition is required, these private parties would have the opportunity to make the necessary arrangements, in a manner and at a cost satisfactory to them. This legislative scheme serves a two-fold purpose. It enables parties with a substantial interest in the property the opportunity to respond to and address the municipality's charges. It provides the municipality an opportunity to have any necessary repairs or demolition work conducted at private expense.
The narrow reading of the definition of "parties in interest" urged by the City, in addition to being inconsistent with the provision's plain wording, is inconsistent with the provision's purpose. We have no doubt that Garden State was a party in interest and entitled to formal notice before a statutory lien for demolition costs could be effective against it.
The City further argues that N.J.S.A. 40:48-1.1 pertains to structures which are not only unfit, but which are dangerous and require immediate demolition, and, under that provision, no notice is required before demolition as a prerequisite to imposition of a valid lien. We disagree for two reasons, one factual, the other legal. The City's contention that this was an emergent situation is simply not supported by the facts. The City commenced this administrative proceeding on August 20, 1998, and demolition did not occur until April 2000, twenty months later. The City relies upon the report of its chief sanitary inspector dated May 3, 1999, which reported the dilapidated condition of the building as a basis for its emergency argument. However, it was not until nearly a year after that report that the buildings were finally demolished.
Further, N.J.S.A. 40:48-1.1 does not create a separate statutory scheme for demolition proceedings. It merely provides an additional remedy in some cases, in which in addition to imposing a lien against the premises for the cost of demolition, the municipality may also enforce payment "as a debt of the owner of the premises." N.J.S.A. 40:48-1.1. We note that the order for demolition issued in the City's favor on December 17, 1999 expressly cites N.J.S.A. 40:48-2.5 as the authority for the order. That section, of course, requires notice to owners and parties in interest. The trial judge correctly rejected the City's argument that no notice was required in this case.
Finally, we address the City's unjust enrichment claim. The City argues that, at the very least, it presented sufficient facts to require an evidentiary hearing on this issue. Considering the facts in the light most favorable to the City, Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146, 156 (1995), the tax collector informed Garden State's principal and attorney on a number of occasions many months prior to demolition that the City intended to demolish the structures, was proceeding in Superior Court towards that end, and intended to impose a lien on the property for the cost of demolition. Garden State never objected or attempted to prevent demolition.
*632 Notwithstanding May's conclusory assertion that Garden State intended to rehabilitate the structures, the fact that Garden State did nothing to stop the demolition might support a reasonable inference that rehabilitation of the structures was not economically feasible and that the value of the property would be enhanced by their demolition and removal. The City argues that these facts, if proven at an evidentiary hearing, would establish that Garden State has been unjustly enriched.
This argument rests on the conclusion that Garden State is reaping a windfall, at public expense, by virtue of the increased value of the property resulting from the demolition, which Garden State knew of well in advance and did nothing to stop. "[A] defendant is obligated to pay for services rendered for it by plaintiff, if the circumstances are such that plaintiff reasonably expected defendant to compensate it, and if a reasonable person in defendant's position would know that plaintiff was performing the services in confidence that defendant would pay for them." Wanaque Borough Sewerage Authority v. West Milford, 281 N.J.Super. 22, 30, 656 A.2d 448, 451 (App.Div.1995) (citing Avery v. Sielcken-Schwarz, 5 N.J.Super. 195, 200, 68 A.2d 635, 637 (App.Div.1949), Accord Insulation Contracting & Supply v. Kravco, Inc., 209 N.J.Super. 367, 377-78, 507 A.2d 754, 759-60 (App.Div.1986)).
Application of these principles cannot support the City's claim. First, the City did not render the demolition service for the benefit of Garden State or any party with an ownership or other interest in the property. The City performed the demolition to preserve the health, safety and welfare of its inhabitants under its general police powers. Second, the City is hard pressed to argue that the circumstances are such that it reasonably expected Garden State to reimburse the City for the demolition costs. This is so for two reasons: (1) The City's statutory remedy is limited to imposition of a lien against the property, and does not include the right of collection as a personal debt from any party; and (2) The City has steadfastly contended that Garden State lacked a sufficient interest in the property to be entitled to notice of the demolition proceedings. Under that logic, the City had no reason to expect that Garden State would pay for the demolition "services." Finally, even if there is some scenario which could give rise to an unjust enrichment claim, Judge Rafferty's equitable remedy enabled the City to preclude Garden State from gaining any windfall.
If the City chooses, it can merely reimburse Garden State for the amounts paid to acquire the tax title liens together with any subsequent taxes paid, as well as statutory interest. In effect, the City is given a judicial authorization to "redeem," after entry of a tax foreclosure judgment in Garden State's favor. By doing so, the City would obtain the benefit of its asserted increase in value of the property. Garden State would receive no windfall. It would receive nothing more than the statutorily authorized return on its investment that any other purchaser of a tax sale certificate anywhere in the State would be entitled to. Garden State has not cross-appealed and thus acquiesces in the remedy fashioned by the Chancery judge. It is thus within the province of the City to prevent Garden State from being unjustly enriched. We therefore conclude that the remedy fashioned by the Chancery judge was fair and reasonable under the circumstances of this case, and we find no basis to disturb it.
Affirmed.